On 9 December, 1903, the commissioners of Dare County, North Carolina, contracted with the defendant in the above-entitled cause to build a courthouse for the county at Manteo, according to the plans and specifications then adopted and made a part of the contract between the parties, for which building the county agreed to pay to the defendant the sum of $16,500 in its bonds of the denomination of $500 each, except in the case of the last bond, which was to be for $1,500.
Among other things, the contract expressly required that the (24) commissioners of the county should "appoint a committee competent to judge as to the quality and character of the material and work," to "inspect and report upon the work and material during the construction of the building"; and the committee was also required by the terms of said contract, when "any material was furnished therefor or work done which, in their opinion, was not in accordance with the plans and specifications, to notify all the parties to the contract, and the work affected by said notice was to cease and not be resumed until the matter had been settled by competent authority"; and it was further provided that if the said committee "permitted any part of the work to be completed without objecting thereto and giving notice as provided, it should be considered as an approval thereof." *Page 23 
It was still further provided that if a disagreement arose between the parties to said contract, in reference to the work or material, or both, the matter should be referred to a board of arbitrators, whose decision should be final, as provided in the contract; and, lastly, it was provided that "upon final completion of the work, the party of the second part (who were the commissioners of the county) should examine the same, and if completed according to contract, they should accept it and make final settlement with the party of the first part (who is the defendant in this cause).
In accordance with the terms of said contract, plans and specifications, the defendant thereafter promptly began work upon the courthouse, and continued the same until the building was finally completed in the fall of 1904; the board of commissioners, upon the execution of the contract, promptly appointed a building committee whose duty it was to inspect all material and work supplied during the construction of said building, and to ascertain whether the same was in accordance with the plans, specifications and contract, and to report to the commissioners. The committee duly inspected the materials and work as the same were supplied by the contractor, and never objected thereto, and when the building was finally completed the commissioners then examined and accepted and paid for the same, that is, on 10 October, 1904, as required by the terms of the contract. During the progress of the work the commissioners made payments to the defendant from time to time, upon the recommendations of the building committee that the material and workmanship were in accordance with the terms of said contract.
Some time after the work had been completed, accepted and paid for, the roof, which was made of metal shingles, was found to be leaking, and the defendant was notified thereof. That was the first and only notice, before the bringing of this suit, of any defects whatsoever which was given to defendant, and he immediately went to Manteo, had the roof examined, and it was agreed between the said (25) board of commissioners and the representative of the defendant that a metal-shingle roof was not practicable for that particular locality, owing to its close proximity to the ocean and the salt air, and it was then agreed to substitute for the metal-shingle roof a slate roof, it being also agreed that the county should pay to the defendant the difference between the cost of the metal-shingle roof and a slate roof; while the slate roof was being put on, the material and workmanship was likewise inspected from time to time by the building committee, and after it had been completed, it was likewise examined, approved, accepted, and the amount due was paid by the then existing board of commissioners *Page 24 
on 15 May, 1905, the defendant giving bond whereby he guaranteed said slate roof against leaks and defects for the period of one year thereafter.
From 15 May, 1905, to 21 February, 1908, a period of nearly three years, no further complaint was made to the defendants that the roof or any portion of the said building was not in every respect satisfactory and as required to be under the contract and guarantee made by the defendant. On 21 February, 1908, the defendant was sued by an entirely new board of commissioners, and the county of Dare claimed that it had been damaged in the sum of $6,000 by reason of the defendant's fraud, deceit and corruption, and breach of contract, as alleged in the complaint filed in said cause. That suit was the only other notice the defendants received of any defect in the building, it being nearly four years after the completion of the building and nearly three years after the slate roof had been completed, accepted and paid for. A change of venue was taken to Perquimans, where the case was heard.
Between 9 December, 1903, when the contract was made, and 10 October, 1904, when the building was accepted and paid for, the personnel of the board of commissioners remained the same; but in the fall election of 1904 some of the members of the old board were retired and new ones elected, and such was the situation when the slate roof was finished and accepted on 15 May, 1905; but when this suit was brought an entirely new board had been elected, so that none of the old members of the board who entered into the contract, supervised and accepted the work thereunder and paid therefor, formed any part of said new board.
The board which brought this suit had nothing whatever to do with the making of the contract or the supervision or acceptance of the building or the payment therefor, and yet in the complaint which was filed it is charged that by fraud and deceit and corruption on the part of the defendant, the old board was influenced to make the contract set (26) up in this suit, and the county paid some $6,500 more than the building was reasonably worth, and that, by said fraud and deceit, improper advantage was taken of an incompetent building committee, and the commissioners themselves were thereby induced to accept a defective building and pay the alleged exorbitant price therefor. The deceit and fraud charged against the defendant in the complaint is of the grossest character, and such is made the basis of the right of the plaintiffs in this case to disregard the final acceptance and payment for the building by the old board of commissioners, and also to make such deceit and fraud the basis of its alleged claim for damages. *Page 25 
The court, on motion of the defendant, entered a judgment of nonsuit, and the plaintiff appealed.
We find not the slightest testimony in the record tending to show any fraud or deceit on the part of the defendant. It is not sufficient merely to charge fraud. Vituperative epithets do not prove it, but the party who alleges any corruption in the making or execution of a contract must establish his allegation by evidence, not beyond a reasonable doubt, nor even by clear and convincing proof, but by a preponderance of the testimony and to the satisfaction of the jury. There being no fraud shown by the plaintiff, the case depends for its just decision upon the ordinary principles applicable to such contracts. It was placed within the power of the plaintiff to inspect the building as the work progressed, and, moreover, it was given the authority to appoint the committee of inspection itself. The evidence shows that the county commissioners had ample opportunity to make the inspection without any interference or obstruction by the plaintiff, and if it failed to do so the fault must be imputed to the county and not to the plaintiff.
We do not understand that the board of commissioners who made the contract and were in office when the courthouse was being built, make any complaint against the contractors, who, so far as it appears in this case, were free from any blame. we must do them the justice to say that the proof acquits them of any charge involving misconduct on their part. On the contrary, they seem to have dealt leniently with the county, and they endeavored, in all respects, to comply with their contract. At least, there is no evidence sufficient to show the contrary.
We cannot better express our views of the law in this case than to quote substantially from the opinion of the court in Pauley (27) Mfg. Co. v. Hemphill County, C.C.A., 608, changing the names or titles of the parties to adapt the ruling to the precise facts of this case. The Court says: "The case as presented for our judgment shows that the defendants were nonresidents, acting entirely through their agent, and the provision in the contract which places it in the power of the plaintiff to select its own committee to act as inspectors during the construction of the building was honestly carried out in accordance with the terms of the agreement, has been of the greatest protection to both the contracting parties, and would appear to be a wise and prudent protection in the plan of said work, the actual performance of which must necessarily be delegated to the representatives of each and could not be *Page 26 
scrutinized by the principals of either. Every opportunity, in reason, was given to the plaintiff to secure good material and work, and the defendant was, at the same time, protected from the faults of it and enabled to correct them, and also from any complaints that might be subsequently made too late to determine their truth or falsity. The action of said arbitrator or supervisor, in the absence of any complaint made at the time, and in the manner provided in the contract, is prima facie evidence of compliance with the contract, and should be conclusive except upon clear and distinct proof."
That case is in point with the one under consideration and clearly sets forth the true principle which the courts apply with respect to such a contract as is now under consideration. This case is also in line with the rulings of the courts in the following cases: R. R. v. March, 114 U.S. 549;Kihlberg v. U.S., 97 U.S. 398; R. R., v. Price, 138 U.S. 185.
The plaintiff's alleged right to recover on the ground that its building committee and its commissioners were incompetent and ignorant, is of no consequence in determining this case upon its merits, unless it had been shown by affirmative proof that the contractor knowingly and deliberately took advantage of said incompetency and ignorance to deceive and mislead, and thereby did deceive and mislead them. But as no such evidence was offered and no evidence of any kind even tending to show that such advantage was taken by the contractor, it is too late now for the plaintiff to complain of the incompetency of its commissioners or of the committee selected by them. The contract required the plaintiff to select a competent committee, capable, of course, of passing upon the character of the material and workmanship. The commissioners assumed the duties in this respect which the contract laid upon them by mutual agreement, and it was their plain duty to (28) know, as they could have known, before they selected such committee, that it would be qualified to discharge the duties which the contract required of it. The commissioners not only owed it to themselves to select nothing but a competent committee, but they owed it to the county and to the contractor; and if they did not perform this duty, the contractor is not to be charged with a breach of the contract. As it now appears that the contractor exercised no influence over the commissioners in the selection of the committee or in the discharge of its duties, and as it further appears from the evidence that the committee could have seen and known all the defects mentioned in the testimony and alleged in the complaint, if there was any such breach of the contract in any particular, it was a failure of duty on the part of the county and not of the contractor, in thus selecting a committee contrary to the provisions of the contract. The county cannot escape the consequences *Page 27 
of any incompetency or neglect of duty on the part of said commissioners or committee, in the absence of fraud, even though it was clearly established that such incompetency existed.
In R. R. v. Price, 138 U.S. 185, already cited, the Court said: "The mere incompetency or mere neglect of the engineer does not meet the requirements of the case, unless such engineer or inspector made such gross error as to imply bad faith. We are of the opinion that the ultimate facts do not authorize the railroad company to go behind the estimates from time to time by its division engineer, which were approved and certified by the assistant engineer and chief engineer. Within a reasonable interpretation of the contract the last monthly estimates of the work assessed, followed by the acceptance by the company of the whole work, was a certificate of complete performance entitling the plaintiff to be paid in full according with the terms of the contract."
In Coal Iron Co. v. Gordon, 151 U.S. 285, the Court substantially said: It is difficult to say what effect should be given an acceptance of work by the superintendent of it, if not to foreclose the parties from thereafter claiming that the contract had not been performed according to its terms. It would appear from the report and the recitals in the final decree of the court, that the main contest was over the construction of a certain guaranty in the contract that all the work was to be done in good workmanlike manner and of suitable material, and each part to be adequate, in design, strength, capacity and workmanship, for the purposes for which it was intended; that the superintendent should pass upon the work every two weeks and if to his satisfaction, it should be finally accepted by the company, so far as done; but if (29) not in compliance with the contract and to his satisfaction, as to the quality of the material and character of workmanship, the commissioners agreed to make it so as rapidly as possible.
The evidence in that case showed that the superintendent of the company made an inspection and supervised the work from time to time and approved it when, in his judgment, it was in compliance with the contract. The contractor claimed to have finished the work on 8 August, 1888, and requested its final acceptance. The president of the Sheffield and Birmingham Coal and Iron Railway Company referred the matter of final acceptance to the said superintendent, who on 18 August accepted in writing the work as completed, according to the terms of the contract. The Court held that as the work was inspected by weekly visits as it progressed, and as the whole was finally accepted on the completion of the contract, such acceptance, in the absence of fraud or mistake on the part of the superintendent, was conclusive.
The same principle is recognized in the case of Sweeny v. U.S.,109 U.S. 618. In the contract which is the foundation of this suit, there *Page 28 
is a clause providing for the appointment of a committee to pass upon certain matters of vital interest to the parties. We are, therefore, to presume, from the terms of the contract, that both parties considered the possibilities of dispute arising between them in reference to the execution of the contract, and it is to be presumed that neither thought of the possibility that the committee might err in its determination of such matters. The parties further considered that the interests of neither party should be put in peril by disputes as to any of the matters covered by their agreement, or in reference to the terms of their agreement, or in reference to the quantity of work to be done under it, or the compensation which the plaintiff might be entitled to demand for the work and material furnished by him.
The law does not afford relief to one who suffers by not using the ordinary means of information, whether his neglect be attributed to indifference or credulity; nor will industrious activity in other directions, to the neglect of such means, be of any avail. Andrus v.Smelting and Refining Co., 130 U.S. 643.
If the means of investigation and verification be at hand, and the attention of the party receiving the representations be drawn to them, the circumstances of the case may be such as to make it incumbent on a court of justice to impute to him a knowledge of the result, which, upon due inquiry, he ought to have obtained, and thus the notion of (30) reliance on the representations made to him may be excluded. Farrar v. Churchill, 135 U.S. 616.
Our cases are in perfect accord with those decisions and the great weight of authority upon the important question now before us. We said inEagin v. Newsom, 121 N.C. 22: "It is a very reasonable principle that the purchaser should not be entitled to an action of deceit if he may readily inform himself as to the truth of the facts which are misrepresented." See, also, Cash Register Co. v. Townsend, 137 N.C. 658; Lytle v. Bird,48 N.C. 225; Saunders v. Hatterman, 24 N.C. 32. Williamson v. Holt,147 N.C. 524, is directly in point upon the general question.
A person cannot take advantage of his own wrong, is a maxim of the law; but it also enforces that other rule, which is quite as well established, that the court will not constitute itself a guardian of persons of mature age and ordinary intelligence, protecting them against the result of their own negligence; and that it will not furnish a person a remedy for a wrong where he cannot possibly prove a legal claim for damages without showing that his own negligence intervened between the act of the alleged wrongdoer and the result complained of, and was the real efficient cause of the injury. Bostwick v. Insurance Co., 67 L.R.A., 724. To the same effect areSlaughter v. Gerson, 80 U.S. 379; *Page 29 Development Co. v. Silver, 125 U.S. 259. The recent decision in Burgin v.Smith, 151 N.C. 561, discusses all the questions raised in this case, and the Court ruled adversely to the plaintiff upon every one of them. If anything, this case is much stronger against the plaintiff than was that case. The two cases are, at least, substantially the same, and we do not hesitate to follow our decision in that case.
Affirmed.
Cited: Hodges v. Wilson, 165 N.C. 328.
(31)