### LINA RICE v. METROPOLITAN LIFE INSURANCE COMPANY.

#### (Filed 19 February, 1919.)

**Insurance, Life—Fraud—False Representations—Evidence.**

The insured may not sustain his action to recover the premiums paid on her policy of life insurance for several years, upon allegation that the agent of the insurer had fraudulently misrepresented that this could be done after a period of twelve years, when her own evidence shows she and the agent read the policy together, and he suggested that she have others read and explain it to her, which she did, and continued to pay the premiums, etc., and the policy itself clearly and unambiguously stated that the premiums would only be returned within two weeks from its date if the insured should be dissatisfied therewith. *Hughes v. Ins. Co.*, 156 N. C., 592, cited and distinguished.

BROWN, J., not sitting.

APPEAL by defendant from *Devin, J.,* at the December Term, 1918, of BEAUFORT.

Two causes of action are stated in the complaint. The first alleges that the defendant issued to the plaintiff a policy of insurance on the third day of October, 1904, and that the plaintiff was induced to accept the policy and pay the premiums thereon by false and fraudulent representations of the agent of the defendant, that if she would pay the weekly premiums for a period of twelve years or more she could then get back all the premiums paid, and the second alleges the right of the plaintiff to have a paid-up policy of insurance issued to her.

The defendant denied that any false representations were made by its agent, but agreed to issue a paid-up policy as demanded in the second cause of action.

The action was tried before a jury on the first cause of action, and the jury returned the following verdict:

1. Did defendant's agent at the time of delivering the policy of insurance and as a part of the transaction of its execution falsely and fraudulently represent to the plaintiff that if she would take the policy and pay the premiums for twelve years she would, under the terms of the policy, be entitled to receive her premiums if she so elected? Answer: "Yes."

2. If so, was the plaintiff reasonably deceived thereby and caused to rely on said statement and unable to understand from the policy that the representation was false? Answer: "Yes."

3. Did the defendant's agent wrongly and incorrectly read the policy to the plaintiff, and if so, was she deceived thereby and caused to take out the policy? Answer: "Yes."

4. Did the plaintiff more than three years prior to the commencement of the action discover, or would she in the exercise of reasonable care have discovered, that any statement alleged to have been made by the agent that she could get her premiums back at the end of twelve years was untrue and contrary to the provisions of the policy? Answer: "No."

5. What damage, if any, is plaintiff entitled to recover? Answer: "$312."

Judgment was entered in favor of the plaintiff, and the defendant appealed, presenting in several exceptions the contention that the plaintiff was not entitled to recover upon her own evidence.

*Ward & Grimes for plaintiff.*
*Small, MacLean, Bragaw & Rodman for defendant.*

ALLEN, J. The policy issued by the defendant to the plaintiff is singularly free from ambiguous and uncertain language, and it contains express provision that it may be surrendered within two weeks of its date and the premiums paid recovered if not satisfactory, thus affording opportunity to become familiar with its terms. The plaintiff testified that the agent who sold the policy read it to her, and she does not say it was read incorrectly. She also says she did not think the agent understood the policy himself, and that he told her to get others to read it for her. He "didn't do anything to keep me from reading it, and he suggested to me to get other people to read it to me." The plaintiff can read and write. She read the policy and others read it to her. Seven months after the policy was issued she told the agent she did not believe it was "any good."

In 1908, four years after the date of the policy, she demanded of the defendant the return of the premiums paid, claiming that the agent of the defendant represented to her that she could get her money back at any time, and this demand was refused, and in 1912, desiring to change the beneficiary, she had Mr. Cave, whom she said she had found correct in all his dealings, to read the policy to her. She continued to pay the premiums until 1916. These facts are disclosed by the evidence of the plaintiff, and they preclude a recovery upon the ground of false representations, because an investigation of the contents of the policy was not only not prevented, but was invited, and the means of information were equally open to both parties.

"The misrepresentation which will vitiate a contract of sale and prevent a court of equity from aiding its enforcement must not only relate to a material matter constituting an inducement to the contract, but it must relate to a matter respecting which the complaining party did not possess at hand the means of knowledge; and it must be a misrepresentation upon which he relied and by which he was actually misled to his injury. A court of equity will not undertake any more than a court of law to relieve a party from the consequences of his own inattention and carelessness. Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities he will not be heard to say that he has been deceived by the vendor's misrepresentations. If, having eyes, he will not see matters directly before them, where no concealment is made or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness and been misled by overconfidence in the statements of another. And the same rule obtains when the complaining party does not rely upon the misrepresentations, but seeks from other quarters means of verification of the statements made and acts upon the information thus obtained." *Slaughter's Admr. v. Gerson,* 80 U. S., 383.

"The general principles applicable to cases of fraudulent representation are well settled. Fraud is never presumed; and where it is alleged, the facts sustaining it must be clearly made out. The representation must be in regard to material fact, must be false, and must be acted upon by the other party in ignorance of its falsity and with a reasonable belief that it was true. . . . If the purchaser investigates for himself and nothing is done to prevent his investigation from being as full as he chooses, he cannot say that he relied on the vendor's representations." *Southern Development Co. v. Silva,* 125 U. S., 247.

"The true rule is stated to be that the seller is liable to an action of deceit if he misrepresent the quality of the thing sold in some particulars in which the buyer has not equal means of knowledge with himself, or if he does so in such manner as to induce the buyer to forbear making the inquiries which for his own security and advantage he would otherwise have made. 2 Kent's Com., 487. The misrepresentation must be of a kind, the falsehood of which was not readily open to the other party. Per *Taylor, C. J., Fagan v. Newsom,* 1 Dev., 22." *Saunders v. Hatterman,* 24 N. C., 35.

These authorities are reviewed in *County v. Construction Co.,* 152 N. C., 29, and the principles stated as follows: "The law does not afford relief to one who suffers by not using the ordinary means of information, whether his neglect be attributed to indifference or credulity;

nor will industrious activity in other directions, to the neglect of such means, be of any avail. *Andrus v. Smelting and Refining Co.,* 130 U. S., 643.

"If the means of investigation and verification be at hand, and the attention of the party receiving the representations be drawn to them, the circumstances of the case may be such as to make it incumbent on a court of justice to impute to him a knowledge of the result which, upon due inquiry, he ought to have obtained, and thus the notion of reliance on the representations made to him may be excluded. *Farrar v. Churchill,* 135 U. S., 616.

"Our cases are in perfect accord with those decisions and the great weight of authority upon the important question now before us. We said in *Fagin v. Newsom,* 121 N. C., 22: 'It is a very reasonable principle that the purchaser should not be entitled to an action of deceit if he may readily inform himself as to the truth of the facts which are misrepresented.' See, also, *Cash Register Co. v. Townsend,* 137 N. C., 658; *Lytle v. Bird,* 48 N. C., 225; *Saunders v. Hatterman,* 24 N. C., 32."

At the last term it was held in *Arndt v. Ins. Co.* that one who could read and write and had kept a policy without reading it, and had paid the premiums for nine years, could not recover the premiums paid upon the ground that he had been induced to accept the policy by the fraudulent representations of the agent of the defendant, and the facts in this case are stronger against the plaintiff because here she read the policy herself, had others upon whom she relied to read it for her, shows that she did not rely upon the representations within seven months after the policy was issued, knew that in four years that the company had repudiated the alleged representations by refusing to return her money, and thereafter continued to pay the premiums for a period of twelve years.

We are, therefore, of opinion that the plaintiff cannot recover upon the first cause of action, and that she is entitled to have the defendant issued to her a paid-up policy, which it has agreed to do.

The facts in the case of *Hughes v. Ins. Co.,* 156 N. C., 592, are entirely different from those in this case. In the *Hughes case* the plaintiff could not read or write. The policy was read and explained by the agent, no one else read it to him, and the agent did not suggest that the insured should make further investigation himself or get others to do so for him.

Reversed.