J. H. BROOKS v. GREENVILLE BANKING AND TRUST COMPANY.

(Filed 2 May, 1934.)

1. **Actions B f—Held: action was for deceit and not for breach of warranty of title of property mortgaged.**

   Before signing the note in question as endorser plaintiff communicated with the vice-president of the payee bank and was told that the bank, in making another loan, had investigated the maker's realty securing the loan, and that the papers were all right, and referred plaintiff to the attorney investigating the title as to the amount of encumbrance against the property. The attorney told plaintiff he had found one encumbrance against the property. Plaintiff then signed the note, and after the note became due and the amount thereof had been charged against his deposit in the bank, discovered that there was another encumbrance against the property, and brought action against the bank, alleging "representation, warranties and guaranties" made by the bank's vice-president: *Held,* the cause of action was the wrongful act of the bank in charging plaintiff's deposit with the note, and is founded on deceit and not a warranty of title by a mortgagee.

2. **Fraud A a—Essential elements of action for deceit.**

   The elements of an action for deceit are a misrepresentation with knowledge of its falsity or with culpable ignorance of its truth or falsity, with intent that the other party should act upon it, and reliance on the misstatement by the other party to his damage.

**3. Fraud A d—Evidence held insufficient to show maker's knowledge of falsity on representation or culpable ignorance of its truth or falsity.**

The evidence tended to show that the vice-president of the payee bank told plaintiff, a prospective endorser of a note, that he did not remember the amount of encumbrance against the property mortgaged by the maker of the note as security, but that the bank had investigated the title in making another loan and that there was but one encumbrance against the property, and referred the endorser to the attorney investigating the title. The attorney told plaintiff that he had found only one encumbrance against the property. After being forced to pay the note, plaintiff discovered that there was another encumbrance against the property. The attorney's investigation of the title was made about a year before the execution of the note: *Held*, even conceding the attorney was the bank's agent, the evidence was insufficient to show knowledge of the falsity of the statement on the part of the vice-president of the bank or culpable ignorance of its falsity sufficient to support an action for deceit.

CLARKSON, J., concurs in result.

APPEAL by plaintiff from a judgment of nonsuit rendered by *Daniels, J.,* at January Term, 1934, of PITT. Affirmed.

In April, 1929, G. C. Buck, Jr., applied to the defendant for a loan of $1,000 to be secured by a crop lien and a deed of trust on a house and lot in the village of Graingers in Lenoir County. The defendant required an endorser of the note who was satisfactory to the vice-president. Buck asked the plaintiff to endorse the note, in consequence of which the plaintiff had an interview with W. H. Woolard, the vice-president of the defendant.

S. T. Carson, an attorney practicing at the Greenville bar, had sometime previously investigated the title to the house and lot when the defendant had made a loan to Buck upon the endorsement of B. B. Sugg. In the conversation Woolard said to the plaintiff, "The paper (Buck's) is all right; we have had an attorney to look it up; I have the records right here." Not finding the records in his file Woolard, after communicating with the attorney who had examined the title, said, "Brooks, Sam has the records." In reference to encumbrances he did not remember the exact amount but thought C. A. Broadway held a mortgage on the house and lot for $2,400. He suggested that the plaintiff examine the records of Mr. Carson, and said that the Broadway mortgage was the only encumbrance on the property. The attorney said he had found a mortgage of $2,400 against the house and lot. The plaintiff then endorsed the note.

The plaintiff testified, "Two years later I learned for the first time that a Mrs. Lancaster in Lenoir County held a note against the property for $1,500 prior to the deed of trust securing the note which I endorsed."

The defendant charged the plaintiff's account with $4.92 interest due on the note, and on 28 December, 1931, the vice-president wrote the plaintiff as follows:

"Dear Mr. Brooks: This is to advise that we are today charging to your savings account $749.63 covering the amount due on the G. C. Buck, Jr., note in amount of $1,000, dated 29 April, 1929, and bearing your endorsement. This is amount due exclusive of the credit made on 30 September, 1930, of $200 by charge of this amount of the account of G. C. Buck, Jr., which credit is attached by Mr. Jefferson of Washington, claiming that this money was proceeds of a crop on which he had a first mortgage, and that this amount is now in litigation which you understand. The note and mortgage will be forwarded to you under separate cover by registered mail. Yours very truly, W. H. Woolard, vice-president."

The plaintiff received the note and mortgage and afterwards went to the bank where the following notation, which he does not deny, was signed: "Note and mortgage referred to above received. 12/29/31. J. H. Brooks."

The plaintiff testified that in drawing out his checking account he left sufficient money in the savings account to pay the note and that he felt it his duty to pay it if he owed it.

At the close of the plaintiff's evidence the court dismissed the action as in case of nonsuit and the plaintiff excepted and appealed.

*Gaylord & Harrell for appellant.*
*Albion Dunn for appellee.*

ADAMS, J. The plaintiff brought suit to recover of the Greenville Banking and Trust Company the sum of $4.92 charged against his account for the payment of interest on the note to 2 January, 1932, and the sum of $749.63 charged against his account in payment of the remainder due on the note. In his complaint the plaintiff refers to "representations, warranties, and guaranties" alleged to have been made by the defendant's vice-president; but as he admitted he had never heard of the warranty by a mortgagee of the title he had taken as security for a loan and as the alleged cause of action is "the unlawful and wrongful act" of the defendant in charging the two items against the appellant's account, it is manifest that the plaintiff treats the proceeding in its essential features as an action for deceit. This becomes more apparent by reference to an excerpt in his brief: "Also, if a bank officer in the apparent scope of his duties makes false and fraudulent assertions, in reliance upon which a person acts to his injury the bank is responsible therefor." 3 R. C. L., 456.

The several elements essential to liability for deceit may be reduced to two general heads: (1) the wrongful conduct of the defendant; (2) its effect upon the plaintiff. As to the first, as was said in *Robertson v.*

*Halton,* 156 N. C., 215, 220, there must be a statement by the defendant (a) which is untrue; (b) the person making the statement, or the person responsible for it, either must know it to be untrue or be culpably ignorant (that is, recklessly and consciously ignorant) whether it be true or not; (c) it must be made with the intent that the plaintiff shall act upon it; and as to the effect, the plaintiff must act in reliance on the statement in the manner contemplated, and thereby suffer damage:

The principle is maintained in a number of cases among the more recent of which are *Peyton v. Griffin,* 195 N. C., 685; *Electric Co. v. Morrison,* 194 N. C., 316; *Rice v. Ins. Co.,* 177 N. C., 128; *Pritchard v. Dailey,* 168 N. C., 330; *Tarault v. Seip,* 158 N. C., 363.

We think his Honor was correct in holding that the plaintiff's evidence is insufficient. The contention that the defendant had employed an attorney to examine the title as a basis for the loan in question is not satisfactory. The vice-president told the plaintiff he did not remember the amount of the encumbrance and referred him to the attorney for specific information of the title, but he did not engage the attorney to examine the title. Concede Woolard's statement that "Mr. Carson was his attorney." The examination which the attorney referred to had been made a year before this interview and the time when the Lancaster mortgage was registered does not appear. We see no culpability upon which the action can be sustained.

After his account had been charged with the interest due and the remainder unpaid, the plaintiff took an assignment of the note and mortgage which are now in his possession. Two years afterwards he first learned of the Lancaster claim.

The act of the vice-president did not subject the defendant to liability. *Quarries Co. v. Bank,* 190 N. C., 277. Judgment

Affirmed.

CLARKSON, J., concurs in result.