BARNHILL, J., dissenting.
DEVIN and SEAWELL, JJ., join in dissenting opinion.
Civil action on alleged contract of robbery and burglary insurance, and for recovery of loss sustained.
In the trial court counsel for plaintiff and for defendant filed with the court an agreed statement of facts substantially as follows:
1. Plaintiff is a corporation with its principal office and place of business located at 108 S. Blount Street, in the city of Raleigh, North Carolina.
2. Defendant, a foreign corporation, with its principal office and place of business in the city of Hartford, Connecticut, was authorized to engage, and did engage in the indemnity insurance business in the State of North Carolina on the dates hereinafter stated, and I. J. Dowdy, Jr., of the city of Rocky Mount, N.C. was a duly licensed agent and representative of it, with power and authority to enter into contracts of insurance for, and on behalf of it.
3. On 21 December, 1939, plaintiff through its manager applied to Dowdy, agent of defendant, for a policy of robbery insurance by letter reading as follows: "Please put a binder effective immediately covering robbery insurance for State Distributing Company, for $1,000 on the outside, and $1,300 on the inside," and "a day or two thereafter by telephone conversation the plaintiff amplified said application to said I. J. Dowdy by applying for a policy of burglary insurance in addition to the policy of robbery insurance above mentioned."
4. Dowdy, defendant's agent, bound plaintiff in accordance with said letter of 21 December, 1939, and the telephone request above mentioned, and on 27 December, 1939, wrote a letter to plaintiff advising that said binder for robbery insurance had been put into effect — the letter reading in essential part as follows: "Thank you for your letter of December 21, 1939, requesting that we cover you in the amount of $1,300 for burglary and robbery insurance inside your premises and $1,000 robbery and hold-up insurance away from your premises. We have put this coverage in effect immediately. I am requesting one of the Company representatives to call on you the next time they are in Raleigh, as we will need additional information to enable us to issue the policy itself, however, *Page 372 
in the meantime, you may be sure you are covered as requested." And at the same time Dowdy wrote defendant at Charlotte, N.C. requesting it "to handle in the manner suggested," and forwarded to it a copy of his said letter to plaintiff.
5. The "letter of 27 December, 1939, from I. J. Dowdy, agent of defendant, to plaintiff constituted a binder or contract of insurance for a period of one year in accordance with the terms of said letter."
6. Under date of 29 February, 1940, defendant issued to plaintiff a policy of robbery insurance for a period of one year from 21 December, 1939, to 21 December, 1940, which policy was entitled a "robbery policy," and contained these provisions: (a) In item 4 an exception to the protection of one outside custodian which exception provided that there were covered by the policy protection for three outside custodians in the amount of $1,000 each; (b) in item 9 a declaration that "the assured has no other burglary, robbery or theft insurance except as stated herein: `NO EXCEPTIONS'"; (c) agreement that "as respects moneys or securities, or both, . . . stated to be insured hereunder: I. To indemnify the assured for all loss . . . occasioned by Robbery Or Attempt Thereat committed . . . from a custodian outside the assured's premises . . .," and "II. To indemnify the assured for all loss . . . occasioned by Robbery Or Attempt Thereat committed . . . within the assured's premises . . .;" (d) definition of robbery as used in the policy to mean "a felonious and forcible taking of property (1) by violence inflicted upon a custodian; (2) by putting him in fear of violence; (3) by any other overt felonious act committed in the presence of a custodian and of which he was actually cognizant provided such other act is not committed by an officer or employee of the assured; (4) from the person or direct care or custody of a custodian, who, while having custody of property covered hereby, has been killed or rendered unconscious by injuries inflicted maliciously or sustained accidentally"; (e) declaration that "the statements in items numbered 1 to 16 inclusive in the declarations are declared by the assured to be true. This policy is issued in consideration of such statements and the payment of total premium in the declarations expressed"; and (f) statement on riders attached relating to amount of policy and to change of address that "nothing herein contained shall vary, alter, extend or otherwise change the condition of the policy other than as above stated."
7. Plaintiff accepted and retained said policy and on the date of loss, 5 August, 1940, still retained said policy.
8. And "on the night of August 5, 1940, and while said policy was in full force and effect, the place of business of plaintiff was broken into or otherwise entered and the cash register of plaintiff was robbed and/or burglarized of the amount of $546.78 in cash," for which loss plaintiff *Page 373 
made claim, and defendant denied liability therefor, and plaintiff instituted this action within the statutory period.
Upon the foregoing facts the plaintiff contends "that at the time of the said robbery and/or burglary it was covered therefor by virtue of the binder issued therefor by the defendant, and that it is, therefore, entitled to recover the amount lost by reason of said robbery and/or burglary"; and "the defendant admits the issuance of the binder for both the robbery and burglary insurance on December 27, 1939, but contends that the issuance of the robbery policy on February 29, 1940, was in substitution of the binder theretofore issued and that thereafter the binders were of no effect and that, therefore, on the date of the loss the plaintiff was not covered for the loss sustained."
By consent of counsel the cause came on for hearing upon the foregoing agreed statement of facts and the court being of opinion that plaintiff is entitled to recover of defendant for the loss sustained, entered judgment that plaintiff recover for the amount thereof, with interest and costs.
Defendant appeals therefrom to the Supreme Court and assigns error.
The question for decision is this: Was the binder or contract of insurance against loss by burglary and robbery, as represented by the letter of 27 December, 1939, superseded by or merged into the formal policy covering robbery only, subsequently delivered, accepted and retained by the assured? In the light of well recognized principles adopted and applied in decisions of this Court an affirmative answer is dictated.
These principles of law are:
1. In the field of insurance a "binder" or a "binding slip" "is merely a written memorandum of the most important terms of a preliminary contract of insurance intended to give temporary protection pending the investigation of the risk of the insurer, or until the issuance of a formal policy. By intendment it is subject to all the conditions in the policy to be issued." Vance on Insurance, Hornbook Series, 2nd Ed., section 66, page 194, quoted and applied in Gardner v. Ins. Co., 163 N.C. 367, 79 S.E. 806, and Leav. Ins. Co., 168 N.C. 478, 84 S.E. 813. See also 29 Amer. Jur., 158, Insurance, sec. 143, and 32 C. J., 1099, Insurance, sec. 183.
2. "When the contract of insurance is finally complete, it is customarily embodied in a formal written instrument, termed a `policy.' This instrument merges all prior or contemporaneous parol agreements touching *Page 374 
the transaction and upon accepting it the insured is conclusively presumed, in the absence of fraud, to have given his assent to all of its terms." Vance on Insurance, Hornbook Series, section 68, page 199. Floars v. Ins.Co., 144 N.C. 232, 56 S.E. 915; Clements v. Ins. Co., 155 N.C. 57,70 S.E. 1076; Wilson v. Ins. Co., 155 N.C. 173, 71 S.E. 79; McNeal v.Ins. Co., 192 N.C. 450, 135 S.E. 300. See also 32 C. J., 1129, Insurance, sec. 233.
In the Floars case, supra, Hoke, J., speaking to the subject, declared that "It is also accepted doctrine that when the parties have bargained together touching a contract of insurance, and reached an agreement, and in carrying it out, or in the effort to carry out the agreement, a formal written policy is delivered and accepted, the written policy while it remains unaltered will constitute the contract between parties, and all prior oral agreements will be merged in the written instrument . . ." And, continuing by quoting from Vance on Insurance, he says: "The rule that all prior agreements are merged in a subsequent written contract touching the same subject matter is now too well established to need support of cited authority. Therefore, when a policy of insurance, properly executed, is offered by the insurer and accepted by the insured as the evidence of their contract, it must be conclusively presumed to contain all the terms of the agreement for insurance by which the parties intend to be bound. If any previous agreement of the parties shall be omitted from the policy, or any term not theretofore considered added to it, the parties are necessarily presumed to have adopted the contract as the final form of their binding agreement."
3. It is the duty of the applicant to communicate acceptance or rejection of the policy. In Couch's Enc. of Insurance Law, Vol. 1, page 172, sec. 94, the author states that: "There is apparently some conflict of authority as to the duty of an applicant for insurance to discover that the policy delivered to him does not conform to the proposal or agreement, and to notify the company of his rejection or acceptance of the policy as written. The weight of authority seemingly supports the rule that it is incumbent upon an applicant who receives a policy which does not conform, as to terms, to the agent's representations, to notify the company of his refusal to accept the policy. And to this end he must examine the policy within a reasonable time after it comes to hand, and promptly, upon discovering obvious departures from the agreement, rescind the transaction and give the company due notice thereof, since, if an applicant receives and retains, without objection, policies made and sent to him, it is regarded as an acceptance." The decisions of this Court are consonant with the weight of authority as above stated. Floars v. Ins. Co., supra; Grahamv. Ins. Co., 176 N.C. 313, 97 S.E. 6; *Page 375 Arndt v. Ins. Co., 176 N.C. 652, 97 S.E. 631. See also Rice v. Ins.Co., 177 N.C. 128, 98 S.E. 283.
4. Reasonable time begins to run when the applicant receives the policy. Couch's Enc. of Insurance Law, Vol. 1, sec. 94, page 173.
5. As to what is reasonable time within which to discover that the policy received differs from the one applied for, or agreed upon, these cases indicate periods of retention without objection which have been held unreasonable: Carrigan v. Nichols, 148 Ark. 336, 230 S.W. 9, three months; Goldstone v. Columbia Life and Trust Co., 33 Cal.App. 119,164 P. 416, four months; Empire State Life Ins. Co. v. Beckwith, 5 Hun (N. Y.), 122, four months; Bostwick v. Ins. Co., 116 Wis. 392, 67 L.R.A., 705, 89 N.W. 538, 92 N.W. 246, four and one-half months. And this Court, while sustaining judgment of nonsuit on another ground in the Floarscase, supra, had this to say: "There is also strong authority for the position that on the facts of this case the relief sought would not be open to plaintiff, even if there had been a mutual mistake in the preliminary bargain and with persons with full power to contract, for the reason that plaintiff accepted the policy with the alleged stipulation omitted without having read same, and held it without protest for three months . . .," and refers to Bostwick v. Ins. Co., supra, as "a well considered case." This headnote epitomizes the decision of the Supreme Court of Wisconsin in this respect: "If a person contracts with another for an article to be delivered or gives an order therefor, and thereafter a thing is delivered to him ostensibly in compliance with the order or fulfillment of the contract, unless, at the time thereof or within a reasonable time thereafter, he notifies such other that such article will not be accepted as satisfying the contract or order, he will be conclusively presumed to have waived all departures therein from the thing bargained for which are obvious to the senses by ordinary exercise thereof."
Applying the above principles to the case in hand: It is manifest from the complaint and the agreed facts that at the time the "binder" was given the parties contemplated the subsequent issuance of a policy of insurance covering burglary and robbery on the inside of plaintiff's premises to the extent of $1,300.
At the outset in the complaint it is alleged that "on the 21st day of December, 1939, plaintiff applied to the said I. J. Dowdy, Jr., agent of the defendant, for a policy of insurance to cover the plaintiff against burglary and robbery on premises of the plaintiff," and that "on December 27, 1939, the said I. J. Dowdy, Jr., accepted the said application of insurance and entered into a contract of insurance with the plaintiff . . ." The agreed facts indicate that the original application was for robbery insurance for $1,300 on the inside," and that plaintiff "amplified *Page 376 
said application . . . by applying for a policy of burglary insurance in addition to the policy of robbery insurance above mentioned." Nevertheless, the letter of 27 December, 1939, which constitutes the binding acceptance of the application, and is the temporary contract, refers to the coverage requested as "$1,300 for burglary and robbery inside your premises . . ." and says "we will need additional information to enable us to issue the policy itself, however, in the meantime, you may be sure you are covered as requested." This language of the binder, in reference to issuance of policy is in the singular. Thus it is clear that the parties had in mind a single policy of insurance covering both burglary and robbery on the inside of plaintiff's premises. The policy delivered was ostensibly pursuant to the order therefor. Moreover, the policy as delivered plainly stated that "The assured has no other burglary, robbery or theft insurance, . . .," and that "the declarations are declared by the assured to be true."
Therefore, conceding that the policy as delivered, does not cover burglary, as counsel for plaintiff concedes, and that there was a departure from the application in that respect, it was the duty of the plaintiff to examine the policy within a reasonable time after it came to hand, and promptly upon discovering the obvious departures from the agreement, to rescind the transaction and give the company due notice thereof. And having received and retained the policy, without objection, so far as the record shows, for more than five months, and until nearly two-thirds of the life of the insurance had expired, it will be conclusively presumed that plaintiff accepted the policy as written with the obvious departure from the binder or preliminary agreement.
Such being our opinion, the judgment below will be
Reversed.