MURPHY, Judge.
 

 *740
 
 Curtis R. Holmes appeals from the trial court's order granting David G. Sheppard and Farm Bureau Insurance of North Carolina,
 
 *373
 
 Inc.'s ("Farm Bureau") (collectively "Defendants") motion for summary judgment as to Holmes's causes of action for: (1) negligence and (2) negligent misrepresentation.
 
 [1]
 
 On appeal, Holmes argues that the grounds argued
 
 *741
 
 for granting the motion are either precluded by precedent, disputed by issues of material fact, or both. Specifically, he maintains: (1) the record shows Sheppard owed Holmes a duty of care, which he breached; (2) evidence of misstatements was not needed to establish negligence by an insurance agent, and, nonetheless, the record shows Sheppard misstated the policy's coverage; (3) Holmes's failure to read the policy was not contributory negligence as a matter of law; and (4) Defendants' theory that Holmes accepted the policy by not reading it cannot support summary judgment in this case. Defendants raise an alternative basis in law through North Carolina Rule of Appellate Procedure 10(c), arguing that the claims herein appealed could have been appropriately dismissed on the alternative basis of failure to state claims upon which relief can be granted.
 

 We hold the trial court did not err in granting summary judgment in favor of Defendants on the negligent misrepresentation claim. However, we agree with Holmes that the trial court erred in granting summary judgment on his negligence claim because there is a genuine issue of material fact as to whether Sheppard owed Holmes a duty of care to obtain coverage for the property at issue while it remained vacant. We reverse for Holmes to proceed with the negligence claim, and we reject Defendants' North Carolina Rule of Appellate Procedure 10(c) argument.
 

 Background
 

 Holmes owns various real estate holdings, including both residential and office buildings. Beginning in approximately 2010, Holmes purchased several insurance policies for his properties through Sheppard, an insurance broker and agent of Farm Bureau.
 

 Holmes filed a claim under one of these Farm Bureau policies in November 2011, when eight heat pumps were stolen from an office building that Holmes owned. Farm Bureau denied the claim because there was a vacancy clause on the property ("the 2011 denial"). Nevertheless, Holmes continued to use Sheppard to purchase Farm Bureau insurance policies.
 

 *742
 
 In August 2012, Holmes contacted Sheppard about a newly constructed home he owned on Thom Road in Mebane ("the Property"). Farm Bureau insured the Property until 19 August 2012, when it cancelled the policy due to the Property being vacant. Sheppard claimed that, although Holmes confirmed the Property was vacant, Holmes stated he would lease or rent the Property within thirty days. Holmes disputes that he told Sheppard he would lease the Property.
 

 Sheppard told Holmes that Farm Bureau was unable to insure the Property, and that he would have to insure it through the North Carolina Joint Underwriters Association ("NCJUA"). Holmes testified that he did not know why he had to purchase the policy through NCJUA instead of through Farm Bureau, but thought "it was because the property was vacant." Holmes further claims that he chose to purchase a policy through Sheppard because he felt Sheppard would "be the best man to-to guide [him] in the right way" in purchasing a policy for the Property because Sheppard knew about the 2011 denial based on vacancy. Holmes testified that although he did not remember the application process for a NCJUA policy, he told Sheppard that he "didn't want to ever
 
 *374
 
 have this vacancy problem again because of what [he] had been through."
 

 Following Holmes's application for coverage, NCJUA issued a policy ("the Policy") insuring the Property, which became effective on 24 August 2012. NCJUA mailed a copy of the Policy to Holmes, who received it, but admittedly did not read it. The Policy remained active in January 2015, when water damage occurred at the Property. Holmes contacted Sheppard to submit a claim for the damage, which Sheppard initially thought would be paid. Sheppard claims he thought the Policy covered the damage because he was "under the impression that [Holmes] had fulfilled his commitment to lease the property[.]" Holmes denies ever making a commitment to lease the Property. NCJUA denied the claim due to coverage exclusions and limitations for " 'Accidental Discharge or Overflow of Water or Steam' of a dwelling that had been vacant for more than 60 consecutive days immediately prior to the loss."
 

 On 7 December 2015, Holmes filed a complaint seeking compensatory damages, alleging claims against Defendants for: (1) negligence; (2) negligent misrepresentation; and (3) constructive fraud in connection with the Policy. Defendants denied these allegations in their Answer, asserting various defenses, including a Rule 12(b)(6) motion to dismiss. On 16 August 2016, Defendants filed a motion for summary judgment, and served notice of a motions hearing for both the motion for summary judgment and the motion to dismiss. The hearing took place on 6-7 September 2016. The trial court granted Defendants' motion for
 
 *743
 
 summary judgment as to all claims in open court. The trial court filed its written order on 13 September 2016. The trial court declined to reach the motion to dismiss because the grant of the summary judgment motion rendered the motion to dismiss moot. Plaintiff timely appealed.
 

 Analysis
 

 Holmes argues the trial court erred in granting summary judgment in favor of Defendants on his claims of negligence and negligent misrepresentation because none of the grounds asserted as a basis for summary judgment support the grant of the motion. Specifically, he maintains: (1) the record shows Sheppard owed Holmes a duty of care, which he breached; (2) evidence of misstatements was not needed to establish negligence by an insurance agent, and, nonetheless, the record shows Sheppard misstated the policy's coverage; (3) Holmes's failure to read the policy was not contributory negligence as a matter of law; and (4) Defendants' theory that Holmes accepted the policy by not reading it cannot support summary judgment in this case.
 

 We reverse the trial court's grant of summary judgment on the negligence claim and affirm the trial court's grant of summary judgment as to negligent misrepresentation. We note Defendants invoke North Carolina Rule of Appellate Procedure 10(c) to raise an alternative basis in law supporting the dismissal of Holmes's claims. We find their argument deficient.
 

 We review an order granting summary judgment de novo.
 
 Forbis v. Neal
 
 ,
 
 361 N.C. 519
 
 , 524,
 
 649 S.E.2d 382
 
 , 385 (2007) (citation omitted). Summary judgment is only appropriate when the record shows "there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."
 
 Id
 
 . at 523-24,
 
 649 S.E.2d at 385
 
 (quotation omitted).
 

 I. Negligence by an Insurance Agent
 

 Holmes argues the trial court erred in granting summary judgment on his negligence claim. We agree, because whether Defendants owed a duty of care to obtain insurance that would cover the Property while it remained vacant is a genuine issue of material fact to be decided by a jury.
 

 A. Duty of Care
 

 To establish a prima facie case for an insurance agent's negligent failure to procure requested coverage, a plaintiff must "prove the existence of a legal duty owed to the plaintiff by the defendant, breach of
 
 *744
 
 that duty, and a causal relationship between the breach and plaintiff's injury or loss."
 
 White v. Consol. Planning, Inc.
 
 ,
 
 166 N.C.App. 283
 
 , 301,
 
 603 S.E.2d 147
 
 , 160 (2004) (citation omitted).
 
 *375
 
 It is well established that a duty "to use reasonable skill, care and diligence to procure" contemplated insurance arises, and is breached, "if an insurance agent or broker undertakes to procure for another insurance against a designated risk[.]"
 
 Kaperonis v. Underwriters at Lloyd
 

 's, London
 
 ,
 
 25 N.C.App. 119
 
 , 128,
 
 212 S.E.2d 532
 
 , 538 (1975). Thus, the agent or broker will be "liable to the proposed insured for loss proximately caused by" a "negligent failure to" procure such insurance.
 
 Id.
 
 at 128,
 
 212 S.E.2d at 538
 
 . "Conversely, if the agent or broker ... procured the contemplated insurance coverage from a competent, solvent insurer, so that it was in effect at the time of the casualty ... he has performed his undertaking and is not liable ... thereon."
 
 Mayo v. Am. Fire & Cas. Co.
 
 ,
 
 282 N.C. 346
 
 , 353,
 
 192 S.E.2d 828
 
 , 832-33 (1972) (citations omitted). If a promise or some affirmative assurance that the broker or agent "will procure or renew a policy of insurance" is given "under circumstances which lull the insured into the belief that such insurance has been effected," then the broker or agent is obligated "to perform the duty which he has thus assumed."
 
 Barnett v. Sec. Ins. Co. of Hartford
 
 ,
 
 84 N.C.App. 376
 
 , 378,
 
 352 S.E.2d 855
 
 , 857 (1987) (quotation omitted).
 

 Here, Holmes claims he requested a policy without a vacancy exclusion. In support of this argument, he points to his deposition testimony, where he repeatedly claimed he told Sheppard he did not want to have another issue because of vacancy, as he did with the 2011 denial. Further, Holmes points to the following exchange that took place at deposition, which he argues demonstrates that he requested coverage without a vacancy exclusion, and that Sheppard undertook to procure such coverage:
 

 Q. What did [Sheppard] say as to why he had to get insurance with a different company?
 

 [Holmes]: I think it was because the property was vacant.
 

 In contrast, Defendants argue that Holmes never requested a policy without a vacancy limitation. By affidavit, Sheppard testified that Holmes did not request a vacancy exclusion for the Property, but, rather, in August 2012, Holmes confirmed he planned to lease the Property within thirty days. Although, in his deposition, Holmes claimed that Sheppard's statement that Holmes planned to lease the Property was false, Holmes did indicate in his application for the Policy that the Property would be occupied. Sheppard claimed he initially thought
 
 *745
 
 the claim at issue would be paid when it was initially presented because he was under the impression that Holmes had fulfilled the commitment to lease the Property.
 

 If a trier of fact were to believe the evidence that Holmes requested a vacancy exclusion and Sheppard sought to secure a policy based on the request, then Sheppard undertook a duty to procure such a policy.
 
 See
 

 Kaperonis
 
 ,
 
 25 N.C.App. at 128
 
 ,
 
 212 S.E.2d at 538
 
 (explaining that the duty "to use reasonable skill, care and diligence to procure" contemplated insurance arises, and is breached, "if an insurance agent or broker undertakes to procure for another insurance against a designated risk"). Thus, as there is a genuine issue as to whether a legal duty arose for Sheppard to procure insurance without a vacancy exclusion, summary judgment was not appropriate on Holmes's negligence claim.
 

 B. Contributory Negligence
 

 Holmes next argues that Defendants' argument in their motion for summary judgment that Holmes was contributorily negligent did not create sufficient grounds for the trial court to grant summary judgment on his negligence claim. We agree.
 

 Generally, if "a person of mature years of sound mind who can read or write signs or accepts a deed or formal contract affecting his pecuniary interest, it is his duty to read it, and knowledge of the contents will be imputed to him in case he has negligently failed to" so read.
 
 Elam v. Smithdeal Realty & Ins. Co.
 
 ,
 
 182 N.C. 599
 
 , 603,
 
 109 S.E. 632
 
 , 634 (1921). However, this duty "is subject to the qualification that nothing has been said or done to mislead him or to put a man of reasonable business prudence off his guard[.]"
 
 Id.
 
 at 603,
 
 109 S.E. at 634
 
 . Thus, where an agent or broker says or does something to mislead an individual or to put a
 
 *376
 
 person of reasonable business prudence off guard, "the cause should be submitted to the jury on the question whether the failure to hold an adequate policy is due to plaintiff's own negligence in not reading his policy and taking out one sufficient to protect him."
 
 Id.
 
 at 603-04,
 
 109 S.E. at 634
 
 .
 

 Whether Holmes read the Policy is not at issue, as Holmes admits he did not read it. Further, he admits that he could have done so. He also testified that he would have done something about the Policy's lack of vacancy exclusion, had he read the policy. Nonetheless, Holmes argues that the cause should be submitted to the jury on the question of whether this failure was contributorily negligent so as to bar his claim under the qualification described in
 
 Elam
 
 because Sheppard made representations regarding the coverage that misled him, or put him off his
 
 *746
 
 guard. Defendants argue that Sheppard made no such representations, and, therefore, Holmes was contributorily negligent, barring relief.
 

 Contrary to Defendants' assertions, there are some facts in evidence, through Holmes's deposition testimony, that suggest Holmes may have been misled, or put off his guard, by Sheppard. Holmes denied he told Sheppard he was going to lease the residence, and repeatedly emphasized that he told Sheppard he did not want another issue to be caused by vacancy. From this testimony, a jury could determine that Sheppard misled Holmes, or put him off his guard, and, thus, Holmes's failure to read the policy does not necessitate as a matter of law that summary judgment be granted on his claim that Defendants were negligent.
 

 Thus, we reverse the trial court's grant of summary judgment for Defendants on Holmes's negligence claim.
 

 II. Negligent Misrepresentation
 

 Holmes argues the trial court erred in granting summary judgment on his negligent misrepresentation claim. We disagree.
 

 "[N]egligent misrepresentation occurs when in the course of a business or other transaction in which an individual has a pecuniary interest, he or she
 
 supplies false information
 
 for the guidance of others in a business transaction, without exercising reasonable care in obtaining or communicating the information."
 
 Pinney v. State Farm Mut. Ins. Co.
 
 ,
 
 146 N.C.App. 248
 
 , 256,
 
 552 S.E.2d 186
 
 , 191 (2001) (quotation omitted). However, "when a party relying on a misleading representation could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence."
 

 Id.
 

 at 256
 
 ,
 
 552 S.E.2d at 192
 
 (quotation omitted).
 

 Here, Holmes argues that Sheppard supplied false information by informing Holmes that the Policy would meet his needs. While whether this is "false information" is in dispute, Holmes could have discovered the truth that there was not a vacancy exclusion upon simple inquiry by reading the Policy. Holmes repeatedly testified that he never read the Policy insuring the Property, despite receiving it in the mail. Had he read the Policy, he would have learned that it did not include a vacancy exclusion. Thus, because he could have discovered the truth upon inquiry, the complaint had to allege Holmes was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence. It did not, so the trial court appropriately granted summary judgment as to Holmes's claim for negligent misrepresentation.
 

 *747
 

 III. Merger and Acceptance of the Policy
 

 Holmes argues summary judgment could not be granted based on Defendants' argument that summary judgment was appropriate because Holmes received, retained, and, thus, accepted as written the Policy. We agree.
 

 Defendants support their argument with an insurance contract case,
 
 State Distributing Corp. v. Travelers Indemnity Co.
 
 ,
 
 224 N.C. 370
 
 ,
 
 30 S.E.2d 377
 
 (1944). In
 
 State Distributing Corp.
 
 , the plaintiff requested both robbery and burglary insurance.
 
 Id.
 
 at 375-76,
 
 30 S.E.2d at 380
 
 . The insurance agent sent the plaintiff a letter that constituted a temporary binder pending issuance of the formal policy, which stated that while the application was being processed, the insurer
 
 *377
 
 would put coverage into effect immediately.
 
 Id.
 
 at 376,
 
 30 S.E.2d at 380
 
 . When the formal policy arrived, it only covered robbery.
 
 Id.
 
 at 376,
 
 30 S.E.2d at 380
 
 . Our Supreme Court held that in the context of the continued efficacy of an insurance binder after delivery of an actual policy, the formal policy merged all prior or contemporaneous parole agreements, and upon accepting the policy, thereby assented to the terms.
 
 Id.
 
 at 376,
 
 30 S.E.2d at 380-81
 
 . Thus,
 
 State Distributing Corp.
 
 did not concern whether the agent was subject to negligence for failure to procure requested coverage. Instead, here, as in
 
 Elam
 
 , "the action is not one ... in which plaintiff is seeking to hold [the insurance company] liable for an obligation not contained in the written policy[;]" instead, the plaintiff is suing "the agent and broker for negligent failure to perform a duty he had undertaken and assumed as agent, by which plaintiff has suffered the loss complained of[.]"
 
 Elam
 
 ,
 
 182 N.C. at 602
 
 ,
 
 109 S.E. at 633
 
 . Therefore, summary judgment cannot be granted based on Defendants' argument that summary judgment was appropriate because, allegedly, Holmes received, retained, and accepted the Policy as written.
 

 IV. Defendants' Cross-Assignment of Error
 

 Defendants contend their motion to dismiss Holmes's claims for failure to state a claim upon which relief can be granted provides an alternative basis in the law upon which relief can be granted. We disagree, because this cross-assignment of error is not properly before our Court.
 

 North Carolina Rule of Appellate Procedure 10(c) provides, in pertinent part:
 

 Without taking an appeal, an appellee may list proposed issues on appeal in the record on appeal based on any
 
 *748
 
 action or omission of the trial court that was properly preserved for appellate review and that deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken. An appellee's list of proposed issues on appeal shall not preclude an appellee from presenting arguments on other issues in its brief.
 

 N.C.R. App. P. 10(c) (2017).
 

 Our Supreme Court has explained that this rule is a mechanism to provide "protection for appellees who have been deprived in the trial court of an alternative basis in law on which their favorable judgment could be supported, and who face the possibility that on appeal prejudicial error will be found in the ground on which their judgment was actually based."
 
 Carawan v. Tate
 
 ,
 
 304 N.C. 696
 
 , 701,
 
 286 S.E.2d 99
 
 , 102 (1982) (discussing the rule for cross-assignments of error).
 

 In the present case, the trial court determined the granting of the motion for summary judgment rendered the motion to dismiss moot. During the hearing, Defendants agreed with the trial court that its ruling on summary judgment rendered the motion to dismiss moot:
 

 [Trial court]: After careful consideration of the court file and everything handed up by counsel and arguments of counsel, Court is of the opinion that the motions for summary judgment as to each count of the complaint should be allowed. And does that make moot then the motion to dismiss?
 

 [Defendants]: It does, Your Honor.
 

 [Trial Court]: Okay. I'll ask you to draw that, [Defense counsel].
 

 By not objecting, Defendants failed to properly preserve any action or omission of the trial court for appellate review as required by North Carolina Rule of Appellate Procedure 10(c).
 
 See
 
 N.C.R. App. P. 10(a)(1) (2017) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.").
 

 Conclusion
 

 For the reasons stated above, we affirm the trial court granting summary judgment in favor of Defendants on the negligent misrepresentation
 
 *749
 
 and constructive fraud claims. However, the trial court erred in granting summary judgment on Holmes's negligence
 
 *378
 
 claim. We reverse for Holmes to proceed with the negligence claim.
 

 REVERSED IN PART; AFFIRMED IN PART.
 

 Judges CALABRIA and ZACHARY concur.
 

 [1]
 

 The trial court also granted summary judgment in favor of Defendants on Holmes's constructive fraud claim. However, Holmes raises no arguments appealing summary judgment on the constructive fraud claim in his opening brief. Nonetheless, Defendants address constructive fraud in their appellee brief, and Holmes then raises the issue in his reply brief. We do not allow Holmes to use his reply brief to raise an issue on appeal that was not raised in his principal brief.
 
 See
 

 Larsen v. Black Diamond French Truffles, Inc.
 
 ,
 
 241 N.C.App. 74
 
 , 78,
 
 772 S.E.2d 93
 
 , 96 (2015) ("[T]his Court has noted that [a] reply brief does not serve as a way to correct deficiencies in the principal brief.") (quotation omitted);
 
 see e.g.
 

 State v. Dinan,
 

 233 N.C.App. 694
 
 , 698-99,
 
 757 S.E.2d 481
 
 , 485 (2014) (holding that where a defendant did not ask the Court of Appeals to review an unpreserved issue under the plain error standard in his principal brief, he could not cure the error by asking the Court to use the plain error standard in his reply brief).