IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-1030

Filed 05 September 2023

New Hanover County, No. 20-CVS-2374

DANIEL JONES, Plaintiff,

v.

J. KIM HATCHER INSURANCE AGENCIES INC.; HXS HOLDINGS, INC.; GEOVERA SPECIALTY INSURANCE COMPANY, and GEOVERA ADVANTAGE INSURANCE SERVICES, INC., Defendants.

Appeal by Plaintiff from order entered by Judge Phyllis M. Gorham in New Hanover County Superior Court. Heard in the Court of Appeals 10 May 2023.

> *The Armstrong Law Firm, P.A., by L. Lamar Armstrong, III, for Plaintiff-Appellant.*
>
> *McAngus Goudelock & Courie, PLLC, by John T. Jeffries and Jared M. Becker, for Defendant-Appellee J. Kim Hatcher Insurance Agencies, Inc.*
>
> *Martineau King PLLC, by Joseph W. Fulton and Je'vonne V. Knox, for Defendant-Appellee HXS Holdings, Inc.*

STADING, Judge delivers the opinion of the Court in part II and announces the judgment of the Court, in which Judge DILLON concurs and Judge COLLINS concurs in result in part and dissents in part by separate opinion. COLLINS, Judge delivers the opinion of the Court in part I in which Judges DILLON and STADING concur.

This appeal arises out of a real property insurance dispute. Daniel Jones ("Plaintiff") appeals from an order dismissing his claims against J. Kim Hatcher Insurance Agencies, Inc. ("Hatcher") and HXS Holdings, Inc. ("HXS") (collectively "Defendants")[1] pursuant to civil procedure rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Court affirms the dismissal order as to the claims against HXS and affirms the dismissal order as to all but the negligence claim against Hatcher. A majority of the Court concludes, however, that the trial court erred by dismissing Plaintiff's negligence claim against Hatcher and thus reverses the order as to that claim and remands the case to the trial court. By dissent, Judge Collins would hold that any negligence on Hatcher's part was defeated by Plaintiff's contributory negligence as a matter of law and thus would affirm the order in its entirety.

**I.**

COLLINS, Judge.

**A. Factual and Legal Background**

The facts of this case, as Plaintiff alleged, are as follows: Plaintiff is a Pender County resident who lived on a five-acre property that included a half-acre pond directly in front of his home. Plaintiff maintained homeowner's insurance through North Carolina Farm Bureau until 2016, when Hatcher, an insurance agency licensed

---

[1] Defendants GeoVera Specialty Insurance Company and GeoVera Advantage Insurance Services, Inc., are not parties to this appeal.

to do business in North Carolina, worked with Plaintiff to procure a homeowner's policy through Nationwide. Hatcher advised Plaintiff of the Nationwide policy's coverage limits and premium costs, then asked Plaintiff to sign a single page application form. Hatcher then inspected and photographed Plaintiff's property and has maintained Plaintiff's information in its files since 2016. In early 2017, Plaintiff returned to North Carolina Farm Bureau for homeowner's insurance.

In August 2017, Hatcher again worked with Plaintiff to procure a homeowner's insurance policy, this time through GeoVera. At all relevant times, GeoVera was not licensed to do business in North Carolina, and thus was subject to the Surplus Lines Act as a nonadmitted insurer. *See* N.C. Gen. Stat. § 58-21-10(5) (2018). Pursuant to the Surplus Lines Act, nonadmitted insurers are not subject to the State's supervision and, in the event the insurer who issued the policy becomes insolvent, losses will not be paid by any State guaranty or solvency fund. *Id.* § 58-21-50 (2018). Moreover, nonadmitted insurers may only issue policies in North Carolina through surplus lines brokers. *See id.* § 58-21-65(a) (2018). Though Hatcher was licensed to do business in North Carolina, Hatcher did not hold a surplus lines license and consequently could not directly sell GeoVera's homeowner's policies. Accordingly, Hatcher procured the GeoVera policy through HXS, who was a licensed surplus lines insurance broker.

Hatcher advised Plaintiff that the GeoVera policy provided the same coverage as Plaintiff's existing policy but at a lower premium. Without sharing any additional information about GeoVera, its status as a nonadmitted insurer, or HXS's

involvement, Hatcher presented Plaintiff a single page insurance application to sign, which included the statement, "I have read the above application and any attachments and declare that the information is true and complete." The single page did not include any questions regarding Plaintiff's home or property, and Hatcher did not ask Plaintiff any questions. Plaintiff, trusting that Hatcher had the information it needed to apply for the GeoVera policy, signed the page.

Through HXS and Hatcher, GeoVera issued Plaintiff a homeowner's policy effective 18 August 2017 until 18 August 2018. Plaintiff renewed this policy in August 2018. Plaintiff received a copy of the renewed policy, which detailed the policy's coverage, liability limits, and applicable deductibles. The policy also noted:

> The insurance company with which this coverage has been placed is not licensed by the State of North Carolina and is not subject to its supervision. In the event of the insolvency of the insurance company, losses under this policy will not be paid by any State insurance guaranty or solvency fund.

In September 2018, Hurricane Florence made landfall in North Carolina causing substantial damage to Plaintiff's home and personal belongings. Plaintiff filed a claim with GeoVera, who evaluated the damage and initially advised Plaintiff that the damage was covered by his homeowner's policy. However, on 23 October 2018, GeoVera cancelled Plaintiff's policy stating that Plaintiff's application for insurance contained material misrepresentations because it did not disclose Plaintiff's pond or that his property spanned five acres. GeoVera stated that, had this information been disclosed, it would not have issued Plaintiff's policy.

**B. Procedural History**

On 31 July 2020, Plaintiff filed a complaint in New Hanover County Superior Court naming Hatcher, HXS, and GeoVera as defendants. Plaintiff alleged that Defendants conspired together to sell GeoVera policies in North Carolina without disclosing that GeoVera was not licensed in North Carolina as part of a "Bait & Switch Scheme" to obtain premiums Defendants otherwise would not have obtained had GeoVera's nonadmitted status been fully disclosed. The complaint included claims for breach of contract and unfair and deceptive trade practices against GeoVera; negligent misrepresentation, fraudulent concealment, and unfair and deceptive trade practices against HXS; negligent misrepresentation, fraudulent concealment, unfair and deceptive trade practices, negligence, constructive fraud/breach of fiduciary duty, and punitive damages against Hatcher; and civil conspiracy against all Defendants. Plaintiff attached a picture of his property, the signature page from his insurance application, and a partial copy of his August 2018 homeowner's policy denoting GeoVera's nonadmitted status to the complaint.

HXS moved to dismiss Plaintiff's complaint on 16 October 2020 pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Hatcher answered on 21 October 2020, denying the material allegations against it, and also moved to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6). Plaintiff discovered that he had named the incorrect GeoVera entity in his initial complaint and filed an amended complaint on 11

December 2020, which was the same in all respects except that it named the correct GeoVera entity.

After hearing argument from the parties, the trial court entered an order on 22 February 2021, dismissing all of Plaintiff's claims against each defendant except for Plaintiff's breach of contract claim against GeoVera and stating, "This Order is a final judgment as to one or more but fewer than all of the claims or parties, and that there is no just reason for delay of an appeal." On 23 February 2021, the trial court entered an amended order removing the statement that there is no just reason for delay of an appeal. On 15 September 2022, Plaintiff voluntarily dismissed his breach of contract claim against GeoVera with prejudice and, on 27 September 2022, filed notice of appeal from the trial court's 23 February 2021 order.

## C. Standard of Review

In ruling on a Rule 12(b)(6) motion to dismiss, "the allegations of the complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted." *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979) (citation omitted). "[T]he well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970) (quotation marks and citation omitted). "When documents are attached to and incorporated into a complaint, they become part of the complaint and may be considered in connection

with a Rule 12(b)(6) motion . . . ." *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009) (citation omitted). "Although it is true that the allegations of [the] complaint are liberally construed and generally treated as true," the court may "reject allegations that are contradicted by documents attached, specifically referred to, or incorporated by reference in the complaint." *Id.* (citations omitted).

Dismissal under Rule 12(b)(6) is proper when, "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Wood v. Guilford Cnty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (citation omitted). We review de novo a trial court's order allowing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Cheryl Lloyd Humphrey Land Inv. Co. v. Resco Prods., Inc.*, 377 N.C. 384, 387, 858 S.E.2d 795, 798 (2021) (citation omitted).

## D. Claims against HXS

Plaintiff argues that he stated valid claims against HXS for negligent misrepresentation, fraudulent concealment, and unfair and deceptive trade practices. Specifically, Plaintiff argues that HXS wrongfully failed to disclose GeoVera's status as a nonadmitted insurer, and that the failure to disclose GeoVera's status

proximately caused his injury.[2]

As an initial matter, "[p]ersons entering contracts of insurance, like other contracts, have a duty to read them and ordinarily are charged with knowledge of their contents." *Baggett v. Summerlin Ins. & Realty, Inc.*, 143 N.C. App. 43, 53, 545 S.E.2d 462, 468 (Tyson, J. dissenting), *rev'd per curiam*, 354 N.C. 347, 554 S.E.2d 336 (2001) (adopting the dissenting opinion). Plaintiff attached to his complaint a partial copy of the homeowner's policy that was in effect when Hurricane Florence made landfall. The first page of the policy noted:

> The insurance company with which this coverage has been placed is not licensed by the State of North Carolina and is not subject to its supervision. In the event of the insolvency of the insurance company, losses under this policy will not be paid by any State insurance guaranty or solvency fund.

Accordingly, Plaintiff was charged with the knowledge of GeoVera's status whether HXS disclosed it or not. Even assuming arguendo that Plaintiff's ignorance was excusable, GeoVera's status as a nonadmitted insurer was not the proximate cause of Plaintiff's alleged injuries.

To state a claim for negligent representation, a plaintiff must allege that they "justifiably relie[d] to [their] detriment on information prepared without reasonable

---

[2] Plaintiff makes several additional arguments in his brief based on allegations that were not included in his complaint, including that HXS fraudulently concealed its involvement. We disregard those arguments as our review of a motion to dismiss is limited to the allegations appearing in the complaint. *See Stanback*, 297 N.C. at 185, 254 S.E.2d at 615 ("In ruling on the motion [to dismiss] the allegations of the complaint must be viewed as admitted, and *on that basis* the court must determine as a matter of law whether the allegations state a claim for which relief may be granted." (emphasis added) (citation omitted)).

care by one who owed the [plaintiff] a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988) (citation omitted).

To state a claim for fraudulent concealment, a plaintiff must allege (1) concealment of a past or existing material fact, (2) that is reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) which results in damage to the plaintiff. *Hardin v. KCS Intern., Inc.*, 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (2009) (citations omitted).

To state a claim for unfair and deceptive trade practices, a plaintiff must allege "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff[.]" *Spartan Leasing, Inc. v. Pollard*, 101 N.C. App. 450, 460-61, 400 S.E.2d 476, 482 (1991) (citations omitted).

Although the elements of each claim differ, each requires that the defendant's conduct proximately caused the plaintiff's injury. *See Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 40, 626 S.E.2d 315, 322 (2006) (affirming dismissal of negligent misrepresentation claim that lacked allegation of proximate cause); *Jay Grp., Ltd. v. Glasgow*, 139 N.C. App. 595, 599-601, 534 S.E.2d 233, 236-37 (2000) (noting that a fraud claim "requires that plaintiff establish the element of proximate causation"); *Spartan Leasing*, 101 N.C. App. at 460-61, 400 S.E.2d at 482 (including proximate cause as an element of an unfair and deceptive trade practices claim). Ordinarily, when a complaint "adequately recites the element of causation . . .

plaintiff has made a sufficient pleading of causation under Rule 12(b)(6)." *Estate of Long ex rel. Long v. Fowler*, 270 N.C. App. 241, 252, 841 S.E.2d 290, 299 (2020) (citation omitted). However, dismissal is appropriate as a matter of law when it "appears affirmatively from the complaint that there was no causal connection between the alleged [misconduct] and the injury." *Reynolds v. Murph*, 241 N.C. 60, 64, 84 S.E.2d 273, 275-76 (1954).

Here, Plaintiff alleged:

> 82. In September 2018, Hurricane Florence slammed eastern North Carolina with high winds and torrential rain (Hurricane Florence).
>
> 83. Hurricane Florence caused substantial damage to [Plaintiff's] home and personal belongings inside the home.
>
> . . . .
>
> 96. After Hurricane Florence, [Plaintiff] promptly filed a claim with GeoVera Insurance through Hatcher.
>
> 97. GeoVera Insurance . . . evaluated the damage to [Plaintiff's] home and personal belongings.
>
> 98. GeoVera Insurance . . . initially advised [Plaintiff] that the damage to his home was covered.
>
> . . . .
>
> 102. [On 23 October 2018], GeoVera Insurance . . . cancelled [Plaintiff's] policy on the alleged basis that [Plaintiff's] application, which did not list his pond or that his property was five (5) acres, contained "material misrepresentations."
>
> 103. GeoVera Insurance . . . contended that if these answers on the application had identified the pond and the acreage, GeoVera Insurance would not under its underwriting guidelines have issued the policy.
>
> 104. As a proximate result of defendants' conduct,

[Plaintiff] has been injured and damage by the uncompensated cost of repair of his home, the uncompensated loss of his personal belongings, the loss of use of his home and personal belongings, his physical injuries, and his mental and emotional distress, anxiety, insecurity, fear, humiliation, and depression caused these losses.

In his claims against HXS, Plaintiff also alleged:

141. HXS had a duty to disclose to [Plaintiff] that GeoVera Insurance did not have a Certificate of Authority to do business in North Carolina, was not licensed to sell insurance in North Carolina, was not subject to North Carolina's supervision, and that losses (due to insolvency) would not be paid by any state insurance guaranty or solvency fund.

142. HXS breached its duty by failing to disclose [these facts to Plaintiff].

. . . .

148. As a proximate result of the HXS's[] negligent failure to disclose, [Plaintiff] has been damaged and is entitled to recover from HXS in excess of $25,000.

. . . .

150. As part of Defendants' Bait & Switch Scheme:

    a. HXS intentionally concealed that GeoVera Insurance was not licensed to sell insurance in North Carolina.

    b. HXS intentionally concealed that GeoVera Insurance was not subject to North Carolina's supervision.

    c. HXS intentionally concealed that because GeoVera Insurance was a surplus line, losses (due to insolvency) would not be paid by any state insurance guaranty or solvency fund.

    d. HXS intentionally concealed that GeoVera Insurance did not have a certificate of authority to

do business in North Carolina.

151.    HXS's intentional concealment of GeoVera Insurance's status as a licensed insurer described above constitutes fraudulent concealment.

. . . .

157.    As a proximate result of HXS's intentional concealment, [Plaintiff] has been damaged and is entitled to recover from HXS in excess of $25,000.

. . . .

163.  HXS's conduct in the Bait & Switch Scheme including its fraudulent concealment described above violated N.C. Gen. Stat. §75-1.1, in that its acts were unfair, deceptive, immoral, unethical, oppressive, unscrupulous, and substantially injurious to [Plaintiff].

. . . .

168.  As a proximate result of HXS's wrongful conduct, [Plaintiff] has been injured and damaged and is entitled to recover from HXS in excess of $25,000.

Plaintiff alleged that HXS's failure to disclose GeoVera's status as a nonadmitted insurer was the proximate cause of his injury. However, Plaintiff's alleged injury was "the uncompensated cost of repair of his home, the uncompensated loss of his personal belongings, the loss of use of his home and personal belongings, his physical injuries, and his mental and emotional distress, anxiety, insecurity, fear, humiliation, and depression[.]" Plaintiff did not allege that GeoVera was insolvent, or that GeoVera otherwise failed to compensate Plaintiff for his losses due to its status as a nonadmitted insurer. Indeed, GeoVera's status as a nonadmitted insurer bore no causal connection to these losses. Thus, it appears affirmatively from the complaint that there was no causal connection between HXS's failure to disclose

GeoVera's status and Plaintiff's injury. Accordingly, Plaintiff's claims against HXS were properly dismissed. *See Reynolds*, 241 N.C. at 64, 84 S.E.2d at 275-76.

### E. Claims against Hatcher

Plaintiff repeats his claims for negligent misrepresentation, fraudulent concealment, and unfair and deceptive trade practices against Hatcher. Plaintiff additionally argues that Hatcher's actions constituted a breach of fiduciary duty and negligence and entitled Plaintiff to punitive damages.[3]

### 1. *Negligent Misrepresentation and Fraudulent Concealment*

Plaintiff's claims for negligent misrepresentation and fraudulent concealment against Hatcher mirror his claims against HXS. Specifically, Plaintiff argues that Hatcher wrongfully failed to disclose GeoVera's status as a nonadmitted insurer, and that the failure to disclose GeoVera's status proximately caused his injury. In his complaint Plaintiff alleged:

> 171. Hatcher had a duty to disclose to [Plaintiff] that GeoVera Insurance did not have a Certificate of Authority to do business in North Carolina, was not licensed to sell insurance in North Carolina, was not subject to North Carolina's supervision, and that losses (due to insolvency) would not be paid by any state insurance guaranty or solvency fund.
>
> 172. Hatcher breached its duty by failing to disclose [these facts to Plaintiff].
>
> . . . .
>
> 178. As a proximate result of Hatcher's negligent failure to disclose, [Plaintiff] has been damaged and is entitled to

---

[3] Plaintiff's negligence and punitive damages claims are addressed in part II and the dissent.

recover from Hatcher in excess of $25,000.

. . . .

180.  As part of Defendants' Bait & Switch Scheme:

    a. Hatcher intentionally concealed that GeoVera Insurance was not licensed to sell insurance in North Carolina.

    b. Hatcher intentionally concealed that GeoVera Insurance was not subject to North Carolina's supervision.

    c. Hatcher intentionally concealed that because GeoVera Insurance was a surplus line, losses (due to insolvency) would not be paid by any state insurance guaranty or solvency fund.

    d. Hatcher intentionally concealed that GeoVera Insurance did not have a certificate of authority to do business in North Carolina.

181.  Hatcher's intentional concealment of GeoVera Insurance's status as a licensed insurer described above constitutes fraudulent concealment.

. . . .

187.  As a proximate result of Hatcher's intentional concealment, [Plaintiff] has been damaged and is entitled to recover from Hatcher in excess of $25,000.

As with Plaintiff's claims against HXS, Plaintiff was charged with the knowledge of GeoVera's status whether Hatcher disclosed it or not. Additionally, although Plaintiff alleged that Hatcher's failure to disclose GeoVera's status as a nonadmitted insurer was the proximate cause of his injury, Plaintiff's alleged injury was "the uncompensated cost of repair of his home, the uncompensated loss of his personal belongings, the loss of use of his home and personal belongings, his physical injuries, and his mental and emotional distress, anxiety, insecurity, fear, humiliation,

and depression[.]" Plaintiff did not allege that GeoVera was insolvent, or that GeoVera otherwise failed to compensate Plaintiff for his losses due to its status as a nonadmitted insurer. Indeed, GeoVera's status as a nonadmitted insurer bore no causal connection to these losses. Thus, it appears affirmatively from the complaint that there was no causal connection between Hatcher's failure to disclose GeoVera's status and Plaintiff's injury. *See Reynolds*, 241 N.C. at 64, 84 S.E.2d at 275-76.

### 2. *Unfair and Deceptive Trade Practices*

Plaintiff argues that Hatcher violated N.C. Gen. Stat. § 75-1.1 by fraudulently concealing GeoVera's status as a nonadmitted insurer and by "unfairly or deceptively provid[ing] false information on the insurance application, contrary to Jones' consent and reliance on Hatcher to provide correct information."

To state a claim for unfair and deceptive trade practices, a plaintiff must allege "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff." *Spartan Leasing*, 101 N.C. App. at 460-61, 400 S.E.2d at 482 (citations omitted).

Here, Plaintiff alleged:

> 193. Hatcher's conduct in the Bait & Switch Scheme including its fraudulent concealment as well as its practice to answer application questions without the insured's knowledge or consent described above violated N.C. Gen. Stat. §75-1.1, in that its acts were unfair, deceptive, immoral, unethical, oppressive, unscrupulous, and substantially injurious to [Plaintiff].
>
> . . . .

195. Hatcher's unfair and deceptive acts or practices were in or affecting commerce and were accomplished in the regular course of their business of selling insurance, and as such, had a substantial impact on the marketplace.

. . . .

198. As a proximate result of Hatcher's wrongful conduct, [Plaintiff] has been injured and damaged and is entitled to recover from Hatcher in excess of $25,000.

### a. *Fraudulent Concealment*

As discussed above, GeoVera's status as a nonadmitted insurer lacks a causal nexus to Plaintiff's injury. Thus, even if Hatcher's failure to disclose GeoVera's status constituted unfair and deceptive trade practices, it appears affirmatively from the complaint that there was no causal connection between Hatcher's failure to disclose GeoVera's status and Plaintiff's injury. *See Reynolds*, 241 N.C. at 64, 84 S.E.2d at 275-76.

### b. *Incorrect Insurance Application Information*

In addition to Plaintiff's general allegation that Hatcher's "practice to answer application questions without the insured's knowledge or consent . . . violated N.C. Gen. Stat. §75-1.1," Plaintiff alleged:

72. Hatcher presented [Plaintiff] with a single page document with a signature line. . . .

73. The signature page did not include the rest of the application, any factual questions for [Plaintiff] to answer regarding [his] home or property, or any answers to such questions . . . .

74. Hatcher did not ask [Plaintiff] any of the application questions relating to [his] home or property.

75. Based on Hatcher's prior inspection, photographing and knowledge of [Plaintiff's] property, [Plaintiff] reasonably trusted that Hatcher had all the information sufficient to apply for the GeoVera Insurance coverage.

76. [Plaintiff] trusted that Hatcher would accurately reflect its knowledge on the application to the extent necessary.

77. Based on Hatcher's instruction to sign and [Plaintiff's] trust that Hatcher would accurately complete the application, [Plaintiff] signed the blank application.

These allegations, taken as true, demonstrate that Plaintiff knowingly consented to Hatcher's practice of answering application questions. Accordingly, the complaint discloses a fact that necessarily defeats Plaintiff's claim that it was Hatcher's practice to answer application questions without the insured's knowledge or consent. *See Wood*, 355 N.C. at 166, 558 S.E.2d at 494.

### 3. Breach of Fiduciary Duty/Constructive Fraud

Plaintiff argues that Hatcher owed him a fiduciary duty and breached that duty by failing to disclose all material facts regarding the insurance policy. Plaintiff also argues that Hatcher's conduct amounted to constructive fraud because Hatcher wrongfully benefitted from its breach.

Breach of fiduciary duty and constructive fraud are related, though distinct, causes of action. *White v. Consol. Plan., Inc.*, 166 N.C. App. 283, 293, 603 S.E.2d 147, 155 (2004) (citation omitted). Each requires the existence and subsequent breach of a fiduciary duty resulting in the plaintiff's injury. *See id.* at 293-94, 603 S.E.2d at 155-56. Constructive fraud requires the additional element that the defendant

benefit himself from the breach. *Id.* at 294, 603 S.E.2d at 156.

Fiduciary duties may arise by operation of law or based on the facts and circumstances of the relationship between the parties. *Lockerman v. S. River Elec. Membership Corp.*, 250 N.C. App. 631, 635-36, 794 S.E.2d 346, 351 (2016) (citation omitted). By operation of law, "[a]n insurance agent acts as a fiduciary with respect to procuring insurance for an insured, correctly naming the insured in the policy, and correctly advising the insured about the nature and extent of his coverage." *Phillips ex rel. Phillips v. St. Farm Mut. Auto. Ins. Co.*, 129 N.C. App. 111, 113, 497 S.E.2d 325, 327 (1998) (citation omitted). An insurance agent's legally imposed fiduciary duty does not extend to properly answering the questions on the insured's application for insurance, particularly when the insured has asserted that the answers are accurate. That duty rests with the insured, and the insured is only excused from their duty in limited circumstances. *See Jones v. Home Sec. Life Ins. Co.*, 254 N.C. 407, 413, 119 S.E.2d 215, 220 (1961) ("[T]he rule that the insured is not responsible for false answers in the application where they have been inserted by the agent . . . applies only if the insured is justifiably ignorant of the untrue answers, has no actual or implied knowledge thereof, and has been guilty of no bad faith or fraud." (citation omitted)); *Goodwin v. Inv'rs Life Ins. Co. of N. Am.*, 332 N.C. 326, 330-31, 419 S.E.2d 766, 768-69 (1992) (holding that plaintiff was responsible for incorrect insurance application answers supplied by agent where plaintiff signed the application); *Cuthbertson v. N.C. Home Ins. Co.*, 96 N.C. 480, 486, 2 S.E. 258, 261 (1887) (finding

no error where trial court excluded proof that plaintiff was not asked application questions before signing the application because, "[i]n the absence of fraud or mistake, a party will not be heard to say that he was ignorant of the contents of a contract signed by him").

However, a fiduciary duty may arise from a relationship "where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Lockerman*, 250 N.C. App. at 635, 794 S.E.2d at 351 (citation omitted).  The standard for such a relationship is demanding; "[o]nly when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen." *Id.* at 636-37, 794 S.E.2d at 352 (citations omitted).  To establish a fiduciary duty in this manner, a plaintiff must allege facts and circumstances which created a relation of trust and confidence.  *Watts v. Cumberland Cnty. Hosp. Sys., Inc.*, 317 N.C. 110, 116, 343 S.E.2d 879, 884 (1986) (citation omitted).

Here, Plaintiff alleged:

> 211.  . . . Hatcher owed a fiduciary duty to [Plaintiff] to procure appropriate insurance coverage in [Plaintiff's] best interests.
>
> 212.  [Plaintiff] reposed actual trust and confidence in Hatcher to procure appropriate insurance coverage as requested, which Hatcher knew and relied upon when procuring the GeoVera Insurance policy.
>
> 213.   Hatcher took advantage of this confidence and

position of trust to procure an insurance policy which, according to GeoVera Insurance, would never have been issued if Hatcher properly answered [Plaintiff's] application questions and/or disclosed the information Hatcher knew.

214. Hatcher used this confidence and position of trust to benefit itself by securing its portion of [Plaintiff's] premium payments (which Hatcher would not have received if it could not obtain a cheaper policy for [Plaintiff]).

215. As a proximate result of Hatcher's breach of fiduciary duty and constructive fraud, [Plaintiff] has been damaged and is entitled to recover from Hatcher in excess of $25,000.

Plaintiff did not allege that Hatcher breached its legally imposed fiduciary duty as an insurance agent, nor could he have. Exhibit 2, attached to Plaintiff's complaint, is a copy of the signature page from Plaintiff's application for insurance bearing his signature and representing that he accepts responsibility for the answers to the application questions. Exhibit 3, also attached to Plaintiff's complaint, is a partial copy of the insurance policy in question, which correctly names Plaintiff and describes the nature and extent of his coverage under the policy. These exhibits contradict any allegation that Hatcher breached its legally imposed fiduciary duty as Plaintiff's insurance agent.

Furthermore, Plaintiff did not allege facts and circumstances which created a relation of trust and confidence between himself and Hatcher, where Hatcher figuratively held all the cards. Plaintiff had all the information available to him as demonstrated by the exhibits attached to his complaint. Thus, Plaintiff's complaint "reveals the absence of facts sufficient to make a good claim" and was properly

dismissed. *Wood*, 355 N.C. at 166, 558 S.E.2d at 494.

## F. Conspiracy

Plaintiff argues that Defendants acted in concert, constituting civil conspiracy.

"In civil conspiracy, recovery must be on the basis of sufficiently alleged wrongful overt acts." *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005) (citations omitted). Thus, where a plaintiff fails to sufficiently state claims against the defendants for wrongful acts, the civil conspiracy claim must also fail. *See Esposito v. Talbert & Bright, Inc.*, 181 N.C. App. 742, 747, 641 S.E.2d 695, 698 (2007) (affirming summary judgment for defendants on civil conspiracy claim because summary judgment for defendants on individual claims was proper).

Because Plaintiff failed to state a legally viable claim for compensatory damages against HXS, Plaintiff cannot state a legally viable claim for civil conspiracy. Accordingly, the claim was properly dismissed.

## II.

STADING, Judge.

## A. Negligence Claim Against Hatcher

This portion of the opinion concerns the trial court's dismissal of Plaintiff's negligence claim against the insurance agent, Defendant Hatcher, for negligently completing Plaintiff's application for insurance on his behalf. Here, Plaintiff alleges that Hatcher acted as his agent; that Plaintiff provided accurate information regarding his property to Hatcher, including its acreage and the presence of a pond;

that Hatcher assured Plaintiff that the policy he procured provided the same coverage as his existing homeowner's policy; that Hatcher told Plaintiff he need only sign the signature page of the multi-page insurance application; that Hatcher filled out the rest of the application for Plaintiff, including information about Plaintiff's property; that Hatcher did not provide accurate information regarding Plaintiff's property on the application, including inaccurate information about its acreage and the presence of a pond; that Hatcher had a duty to use reasonable care when applying for and undertaking to procure insurance for Plaintiff; that Hatcher breached that duty; and, that as a proximate cause of Hatcher's negligence, Plaintiff's suffered damages.

We conclude that Plaintiff's allegations are sufficient to state a claim for negligence against Hatcher. The allegation that Plaintiff, himself, failed to read the other pages of the insurance application filled out by Hatcher before signing does not establish, as a matter of law, that Plaintiff was contributorily negligent vis-à-vis his negligence claim against Hatcher. In reaching our conclusion on this issue, we are guided by our Court's decision in *Holmes v. Sheppard*, 255 N.C. App. 739, 805 S.E.2d 371 (2017), and the cases cited therein, which held that, in some circumstances, it is a question for the jury to determine whether one is contributorily negligent for failing to read the document he is signing.

In *Holmes*, the insurer denied the insured coverage when his vacant building was damaged. *Id.* at 742, 805 S.E.2d at 373–74. Consequently, the insured sued the insurance agent for negligence because, unbeknownst to him, the procured policy did

not cover damages to vacant buildings. *Id.* at 742, 805 S.E.2d at 374. In procuring the underlying policy, the insured claimed, and the insurance agent denied, that he requested a policy without a vacancy exclusion. *Id.* at 744, 805 S.E.2d at 375. We held that, if a trier of fact were to believe the evidence that the insured requested a vacancy exclusion and the agent sought to secure a policy based on this request, then the agent undertook a duty to procure such a policy. *Id.* at 745, 805 S.E.2d at 375. Therefore, summary judgment was not appropriate on the claim of negligence. *Id.*

Moreover, when addressing contributory negligence that case, we cited our Supreme Court's holding that though a person generally has a duty to read what he signs, *id.* at 745, 805 S.E.2d at 376 (citing *Elam v. Smithdeal Realty & Ins. Co.*, 182 N.C 599, 603, 109 S.E. 632, 634 (1921)), this duty "is subject to the qualification that nothing has been said or done to mislead him or to put a man of reasonable business prudence off his guard." *Id.* (citing *Elam*, 182 N.C. at 603, 109 S.E. at 634). Therefore, we reasoned that "where an agent or broker says or does something to mislead an individual or to put a person of reasonable business prudence off guard, the cause should be submitted to the jury on the question whether the failure to hold an adequate policy is due to plaintiff's own negligence in not reading his policy and taking out one sufficient to protect him." *Holmes*, 255 N.C. App. at 745, 805 S.E.2d at 375–76 (internal quotation marks and citation omitted).

Here, Plaintiff alleged that Hatcher—based on an assurance—was entrusted to correctly complete the application for Plaintiff with the correct information that

Hatcher had been provided. Plaintiff's failure to read the application in full may be grounds to excuse the insurer from covering Plaintiff's loss on a contract claim where the application contained incorrect information about his property. But here, like *Holmes*, it is for the jury to determine whether Plaintiff was contributorily negligent in relying on the agent rather than reading the application himself before signing.

Our dissenting colleague cites five insurance cases in support of the result reached by the trial court. However, none of them are on point.

Two of the cases held essentially that an insurance agent does not have the duty to advise an insured about the contents of a policy or to advise an insured about the types of coverage the insured should seek—absent some special relationship. In one of the cases, we held that the fact an insured has purchased various insurance products through the same agent for twenty-eight years "would not put an objectively reasonable agent on notice that his advice is being sought or relied on." *Bigger v. Vista Sales & Mktg., Inc.*, 131 N.C. App. 101, 105, 505 S.E.2d 891, 893-94 (1998) (noting that an agent generally does not have any duty to procure coverage "which has not been requested"). In the other case, our Supreme Court adopted a dissent from our Court which stated that an agent has "a duty to make an application for the insurance coverage specifically requested by [the insured]" and that the insured has "a duty to read their insurance policy." *Baggett v. Summerlin*, 143 N.C. App. 43, 53, 545 S.E.2d 462, 468 (Tyson, J. dissenting), *rev'd per curiam*, 354 N.C. 347, 554 S.E.2d 336 (2001) (adopting the dissenting opinion).

The other three cases involve disputes by an insured against the insurer – and not the agent—for coverage under a policy. In two of the cases, our Supreme Court held that an insured could not recover against the insurer where the insured had provided false information in the insurance application. *Jones v. Home Sec. Life Ins. Co.*, 254 N.C. 407, 119 S.E.2d 215 (1961); *Goodwin v. Inv'rs Life Ins. Co. of N. Am.*, 332 N.C. 326, 419 S.E.2d 766 (1992). We note that, in *Goodwin*, the plaintiffs sued an insurance agent as well; however, the opinion expressly states that the agent was acting on behalf of the insurance company and *not* the insured. *Id.* at 327, 419 S.E.2d at 767 (stating that the agent defendant was acting as agent for the defendant insurance company). In the remaining case, we held that an insurer could avoid coverage on a policy based on a misrepresentation by the insured on the application. *Bell v. Nationwide Ins. Co.*, 146 N.C. App 725, 554 S.E.2d 399 (2001). In that case, the agent never asked the insured about whether the insured had ever declared bankruptcy, but simply checked "no" on the application. *Id.* at 727, 554 S.E.2d at 401. The insured, however, signed the application with the incorrect information without reading the application. *Id.* Here, in contrast, Plaintiff provided the correct information to the agent, who in turn affirmatively took on a duty to accurately complete an application to procure the requested insurance policy, but inaccurately completed the application, thereby permitting a jury to find causation and harm.

In the foregoing sections of this opinion, we have already held that Plaintiff cannot recover from the insurer. Plaintiff certainly had a duty to the insurer to see

to it that the application contained accurate information. And though, based on the complaint, Plaintiff may not have done anything for which he is personally negligent, he is charged with the negligence of his agent dealing with third parties on his behalf. In this matter, consistent with the ruling in *Holmes*, we are simply sustaining Plaintiff's claim against the agent, who he claims was acting as his agent. Based on the allegations, considering Plaintiff's relationship with Hatcher, Plaintiff merely had an obligation to supply Hatcher with accurate information about his property—which he did. And since Hatcher was provided with accurate information and assumed the duty to fill out the application, it was to be completed accurately—which was not done. In sum, while Plaintiff's conduct may have played a role in the denial of the claim by the insurer, we cannot say that his conduct was contributorily negligent and caused the agent to improperly complete the application for insurance.

**B. Punitive Damages**

Though we conclude the complaint alleges a claim for negligence against Hatcher, we agree with Hatcher that Plaintiff has failed to allege a claim for punitive damages for any alleged conduct on his part in improperly filling out Plaintiff's insurance application. To recover punitive damages under the law of our State, a claimant must prove that an aggravating factor of fraud, malice, or willful or wanton conduct is present and related to the injury subject to the compensatory damages. *See* N.C. Gen. Stat. § 1D-15(a) (2021). Here, at the end of his complaint, Plaintiff alleges that "Hatcher's conduct was aggravated and outrageous, willful and wanton,

malicious and in reckless disregard of Plaintiff's rights," without reference to the conduct of Hatcher that he claims to be an aggravating factor. Plaintiff makes no allegation that Hatcher acted willfully in filling out the insurance application.

Further, as Hatcher correctly notes: "Plaintiff has failed to allege that any officer, director, or manager of Hatcher – an insurance agency – participated in or condoned any conduct that constitutes an aggravating factor giving rise to punitive damages." In North Carolina, punitive damages may be awarded if the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor that gave rise to punitive damages. *See* N.C. Gen. Stat. § 1D-15(c). The amended complaint in this matter does not provide that an officer, director, or manager of Hatcher was responsible for the negligence at the time of the alleged conduct.

Considering the foregoing reasoning, we conclude that Plaintiff has failed to allege facts showing that he is entitled to punitive damages based on the allegations concerning Hatcher's conduct in filling out the insurance application.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Judge DILLON concurs.

Judge COLLINS concurs in result in part and dissents in part by separate opinion.

COLLINS, Judge, concurring in result in part and dissenting in part.

I concur in the result of part II affirming the dismissal of Plaintiff's punitive damages claim. However, because I would hold that any negligence on Hatcher's part was defeated by Plaintiff's contributory negligence as a matter of law, I respectfully dissent from part II of the majority opinion concluding that Plaintiff's contributory negligence was a matter for the jury and reversing the trial court's dismissal of Plaintiff's negligence claim.

Here, Plaintiff alleged, in pertinent part, as follows:

> 72. Hatcher presented [Plaintiff] with a single page document with a signature line. (Exhibit 2) (the signature page).
>
> 73. The signature page did not include the rest of the application, any factual questions for [Plaintiff] to answer regarding [his] home or property, or any answers to such questions . . . .
>
> 74. Hatcher did not ask [Plaintiff] any of the application questions relating to [his] home or property.
>
> 75. Based on Hatcher's prior inspection, photographing and knowledge of [Plaintiff's] property, [Plaintiff] reasonably trusted that Hatcher had all the information sufficient to apply for the GeoVera Insurance coverage.
>
> 76. [Plaintiff] trusted that Hatcher would accurately reflect its knowledge on the application to the extent necessary.
>
> 77. Based on Hatcher's instruction to sign and [Plaintiff's] trust that Hatcher would accurately complete the application, [Plaintiff] signed the blank application.

Exhibit 2, attached to Plaintiff's amended complaint, bears Plaintiff's signature beneath the following attestation:

> I have read the above application and any attachments and declare that the information is true and complete. This information is being offered to the company as an inducement to issue the policy for which I am applying.

North Carolina recognizes the defense of contributory negligence; "thus, a plaintiff cannot recover for injuries resulting from a defendant's negligence if the plaintiff's own negligence contributed to his injury." *Draughon v. Evening Star Holiness Church of Dunn*, 374 N.C. 479, 483, 843 S.E.2d 72, 76 (2020) (citation omitted). "In order to establish contributory negligence, it must be shown (1) that the plaintiff failed to act with due care and (2) such failure proximately caused the injury." *Mohr v. Matthews*, 237 N.C. App. 448, 451, 768 S.E.2d 10, 12 (2014) (quotation marks and citation omitted). "[A] court may dismiss a complaint based on contributory negligence pursuant to Rule 12(b)(6) when the allegations of the complaint taken as true show negligence on the plaintiff's part proximately contributing to his injury, so clearly that no other conclusion can be reasonably drawn therefrom." *Id.* at 451, 768 S.E.2d at 12-13 (quotation marks and citation omitted).

"Persons entering contracts of insurance, like other contracts, have a duty to read them and ordinarily are charged with knowledge of their contents." *Baggett v. Summerlin Ins. & Realty, Inc.*, 143 N.C. App. 43, 53, 545 S.E.2d 462, 468 (Tyson, J. dissenting), *rev'd per curiam*, 354 N.C. 347, 554 S.E.2d 336 (2001) (adopting the dissenting opinion). This applies to applications for insurance policies as well as insurance policies themselves. *See, e.g., Goodwin v. Inv'rs Life Ins. Co. of N. Am.*, 332

N.C. 326, 330-31, 419 S.E.2d 766, 768-69 (1992) (holding that plaintiff was responsible for incorrect insurance application answers supplied by agent where plaintiff signed the application); *Bell v. Nationwide Ins. Co.*, 146 N.C. App. 725, 727-28, 554 S.E.2d 399, 401-02 (2001) (same). Where an insurance agent provides incorrect answers on an insurance application, the insured's ignorance is excused "only if the insured is justifiably ignorant of the untrue answers, has no actual or implied knowledge thereof, *and* has been guilty of no bad faith or fraud." *Jones v. Home Sec. Life Ins. Co.*, 254 N.C. 407, 413, 119 S.E.2d 215, 220 (1961) (citation omitted) (emphasis added).

By signing the application, Plaintiff affirmatively represented that he had read it and that the information it contained was true and accurate. Plaintiff did not allege that Hatcher said or did anything to mislead him or put him off his guard; he alleged only that Hatcher provided the signature page without the application, and that he trusted that Hatcher would accurately complete the application. Even if Plaintiff had alleged facts showing that he justifiably relied on Hatcher to answer the application questions, Plaintiff's signature on the application form shows that he had implied knowledge of the application answers. *See Jones*, 254 N.C. at 413, 119 S.E.2d at 220 (explaining that an insured's ignorance is excused "only if the insured is justifiably ignorant of the untrue answers, has no actual or implied knowledge thereof, and has been guilty of no bad faith or fraud"). Furthermore, Plaintiff has alleged no facts justifying his failure to read the insurance policy upon its renewal.

The majority states that "Plaintiff alleges that Hatcher acted as his agent" and suggests that Plaintiff's trust in Hatcher amounts to justified reliance because Plaintiff had trusted Hatcher once before. However, Plaintiff neither made nor incorporated such an allegation in his negligence claim, and even if he had, one instance of uninduced trust is insufficient to relieve a plaintiff of his duty to read the contracts he signs. *See, e.g., Bigger v. Vista Sales & Mktg., Inc.*, 131 N.C. App. 101, 105, 505 S.E.2d 891, 893-94 (1998) (refusing to acknowledge a 28-year relationship between agent and insured as justifying the insured's reliance on the agent).

Accordingly, Plaintiff's conduct, or lack thereof, as alleged in his amended complaint constituted contributory negligence as a matter of law. Thus, I would hold that Plaintiff's complaint was properly dismissed because it "discloses some fact that necessarily defeats [his] claim." *Wood v. Guilford Cnty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (citation omitted).

Plaintiff additionally argues that Hatcher's conduct was willful and wanton, rendering Plaintiff eligible to recover punitive damages. "Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages . . . ." N.C. Gen. Stat. § 1D-15 (2022). Because I would hold that Plaintiff's negligence claim was properly dismissed, I would also hold that Plaintiff's claim for punitive damages was properly dismissed as Plaintiff did not state a claim for compensatory damages.

For the foregoing reasons, I would hold that the trial court did not err by dismissing Plaintiff's claims against HXS and Hatcher and would affirm the order in its entirety.